**Electronically Filed
Supreme Court
SCWC-10-0000077
29-JUN-2015
08:03 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

In the Matter of the Grievance Arbitration Between

STATE OF HAWAII ORGANIZATION OF POLICE OFFICERS (SHOPO),
exclusive representative for Bargaining Unit 12, Police,
on behalf of SHELLY L. RODRIGUES, JAMES A. RODRIGUEZ,
and SHANE Y. SOKEI,
Respondents/Grievants-Appellants,

and

COUNTY OF KAUA'I and KAUA'I POLICE DEPARTMENT,
Petitioners/Employers-Appellees.

SCWC-10-0000077

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-10-0000077; S.P. NO. 09-1-0031)

June 29, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON JJ.

OPINION OF THE COURT BY POLLACK, J.

The County of Kaua'i and Kaua'i Police Department (the Employer) filled five police sergeant positions in 2007 through internal promotions. The State of Hawaii Organization of Police Officers (SHOPO) challenged the non-promotions of three police

officers through the grievance procedures of the collective bargaining agreement governing the parties. When the parties were unable to resolve the grievances, the matter was submitted to arbitration for final determination. After finding that the promotions were subjective, arbitrary, and capricious in violation of the collective bargaining agreement, the arbitrator awarded the three officers promotions and back pay. The Circuit Court of the Fifth Circuit (circuit court) found that it was beyond the scope of the arbitrator's authority to award promotions and vacated the arbitrator's remedy.[1] The principal issue before this court is whether it was proper for the circuit court to vacate the arbitrator's remedy.

## I. BACKGROUND

In May 2007, the Employer notified SHOPO that it would fill five police sergeant positions from the existing promotional eligible list, which was based on the results of written examinations. The acting chief of police decided to add an oral interview to the promotional process. An examination panel was assembled, and the interviews were conducted in August 2007. Five candidates were selected to the police sergeant positions, and following the appointments, three of the

---

[1]   SHOPO appealed the decision of the circuit court to the Intermediate Court of Appeals (ICA), and the ICA vacated the circuit court's decision.

unsuccessful candidates filed grievances alleging violations of the collective bargaining agreement.

The grievances were brought under the collective bargaining agreement that pertains to the employment of state and county police officers (agreement).[2] The agreement is between SHOPO--the exclusive representative for public employees in the police officers unit--and the State of Hawai'i, City and County of Honolulu, County of Hawai'i, County of Maui, and County of Kaua'i. The agreement includes a four-step grievance procedure that provides for the final settlement of unresolved grievances through "final and binding" arbitration.[3]

The four-step grievance procedure is set out in Article 32, which provides for arbitration as the final step and restricts review of the decision on appeal: "The award of the Arbitrator shall be accepted as final and binding. There shall be no appeal from the Arbitrator's decision by either party, if such decision is within the scope of the Arbitrator's authority as described below . . . ." Article 32 includes a limitation on the arbitrator's authority: "The Arbitrator shall not have the

_____

[2] The parties agreed that Articles 1, 14, 32, 35, and 47 were substantially the same between the contract that was in effect July 2003 through June 2007 and the contract in effect from July 2007 through June 2011. All quotations from the agreement in this opinion are from the agreement effective July 2007.

[3] Article 32 provides for the grievance procedure to govern the parties under the agreement; it includes provisions regarding the selection of an arbitrator, the arbitrator's jurisdiction, a pre-hearing, discovery, and the arbitration award.

power to add to, subtract from, disregard, alter, or modify any of the terms of this Agreement."  Article 32 also sets forth the arbitrator's authority:

> The Arbitrator's authority shall be to decide whether the Employer has violated, misinterpreted or misapplied any of the terms of this Agreement and in the case of any action which the Arbitrator finds unfair, unjust, improper or excessive on the part of the Employer, such action may be set aside, reduced or otherwise changed by the Arbitrator. The Arbitrator may, in the Arbitrator's discretion, award back pay to recompense in whole or in part, the employee for any salary or financial benefits lost, and return to the employee such other rights, benefits, and privileges or portions thereof as may have been lost or suffered.

Article 47 of the agreement specifically addresses promotions: "Promotions shall be based upon fair standards of merit and ability, consistent with applicable civil service statutes, rules and regulations and procedures."  The "Rights of the Employer" are provided for in Article 11; it includes a single section titled "Management Rights" that provides, "The Employer reserves and retains, solely and exclusively, all management rights and authority, including the rights set forth in Section 89-9(d)(1)-(8), Hawaii Revised Statutes, except as specifically abridged or modified by this Agreement."[4]

---

[4] HRS § 89-9(d) (Supp. 2007) prohibits agreement to a provision that "would interfere with the rights and obligations of a public employer to" do certain listed functions including the right to "[h]ire, promote, transfer, assign, and retain employees in positions."  Notwithstanding HRS § 89-9(d)'s prohibition of agreements that interfere with certain management rights, it also provides the following:

> This subsection shall not be used to invalidate provisions of collective bargaining agreements in effect on and after June 30, 2007, and shall not preclude negotiations over the procedures and criteria on promotions . . . .

(continued . . .)

The grievances of the three police officers asserted violations of the collective bargaining agreement. The grievants contended that the promotional process used by the Employer was subjective, arbitrary, and capricious. Each grievance statement stated the following under the heading "remedy sought": "That the employer promote the Grievant to Police Sergeant on the effective date of promotion and be made whole."

The parties were not able to settle the grievances through the first three steps of the grievance procedures before the Employer, and in May 2008, SHOPO sent the Employer a Notice of Intent to Arbitrate on behalf of each grievant. Larry L. Cundiff, Sr. was selected as the sole arbitrator for determination of the three grievances (arbitrator). A consolidated arbitration hearing on the grievances was held before the arbitrator for three days in January 2009.

At the beginning of the hearing, the arbitrator stated, "Both parties have agreed that this matter is properly before the arbitrator." After a brief discussion with both attorneys off the record, the arbitrator stated that the parties previously agreed that SHOPO had the right to challenge "the way

---

(continued . . .)
            Violations of the procedures and criteria so negotiated may
            be subject to the grievance procedure in the collective
            bargaining agreement.

HRS § 89-9(d).

5

that the promotions were done; however, they do not challenge the [Employer's] right to make the promotions." During the hearing, a total of seventy-five exhibits were admitted into evidence, and eight witnesses testified. Testimony indicated that there were three to five vacant sergeant positions at that time.

In the arbitrator's June 2, 2009 decision, the arbitrator found that the matter was properly before the arbitrator and that the arbitrator had jurisdiction over the grievances.[5] The arbitrator's decision provided an overview of the testimony presented regarding the three officers' work history and qualifications. The arbitrator found that the grievants were denied promotions "due to subjective, arbitrary and capricious promotional practices." The arbitrator awarded the grievants promotions to sergeant positions, back pay, and "any additional rights, benefits and privileges they would have been entitled to had they been promoted."

SHOPO filed a motion to confirm the arbitrator's award in the circuit court on June 23, 2009, arguing that the award was valid, binding, and issued within the arbitrator's authority.[6] The Employer opposed SHOPO's motion and moved for

_____

[5] The arbitrator determined he had authority based on the section titled "Arbitrators Authority" in Article 32.

[6] The Honorable Kathleen N.A. Watanabe presided in all circuit court proceedings in this case.

the circuit court to vacate the award on the basis that the arbitrator "exceeded his authority" under the agreement. The Employer also maintained that the arbitrator's actions "were beyond the jurisdiction of negotiation and arbitration, as well as a violation of public policy." SHOPO opposed the Employer's motion to vacate and contended that the arbitrator had the jurisdiction and authority to decide the matter and noted that the Employer conceded in pre-arbitration proceedings that SHOPO had the right to grieve the subject promotions.

The circuit court heard argument on the motions in a July 29, 2009 hearing. The court stated during the hearing that the grievances were properly before the arbitrator and that the Employer had taken "inconsistent positions" regarding whether the promotions were a proper subject of arbitration. The circuit court stated, "I believe the employer is estopped from arguing otherwise, because they agreed to final and binding arbitration." The circuit court continued, "They agreed that this was a proper subject."

However, the circuit court also found that it was beyond the scope of the arbitrator's authority under the agreement and HRS § 658A-23 to award promotions and back pay. The circuit court found that the agreement in this case was distinguishable from the collective bargaining agreement in University of Hawai'i Professional Assembly v. University of

Hawai'i, 66 Haw. 214, 659 P.2d 720 (1983) (per curium) [hereinafter UHPA II],[7] which the circuit court found granted the arbitrator greater authority.

On August 6, 2009, the circuit court granted in part and denied in part the Employer's motion to vacate. The court confirmed the arbitrator's findings of facts and conclusions with the exception of the arbitrator's remedy, which the court vacated. The court reasoned that the grievances were properly before the arbitrator and within his jurisdiction, but the court also found that the arbitrator's remedy exceeded his authority and powers granted under Article 32 of the agreement in violation of HRS § 658A-23. In accordance with its rulings, the court denied SHOPO's motion to confirm the arbitrator's award and remanded the case for a rehearing on the issue of remedy. SHOPO filed a notice of appeal, which was dismissed by the ICA for lack of appellate jurisdiction.

On July 8, 2010, the arbitrator issued a decision regarding the circuit court's order denying the Employer's request to vacate the arbitrator's remedy. The arbitrator's

---

[7] In a series of four cases decided on the same day in 1983, this court clarified judicial review of arbitration decisions in the context of public sector collective bargaining agreements providing for final and binding arbitration. See Univ. of Haw. Prof'l Assembly v. Univ. of Haw., 66 Haw. 207, 659 P.2d 717 (1983) (per curium) [hereinafter UHPA I]; UHPA II, 66 Haw. 214, 659 P.2d 720; Univ. of Haw. v. Univ. of Haw. Prof'l Assembly, 66 Haw. 228, 659 P.2d 729 (1983) (per curium) [hereinafter UHPA III]; Univ. of Haw. v. Univ. of Haw. Prof'l Assembly, 66 Haw. 232, 659 P.2d 732 (1983) (per curium) [hereinafter UHPA IV].

8

decision stated that the parties agreed to a rehearing on the remedy issue before the arbitrator by submitting their arguments and positions via memoranda. The arbitrator concluded that the remedy from his previous decision would "remain unchanged" based on the arbitrator's "reading and interpretation of the plain language and meaning of the 'Arbitrator's Authority' as set forth in Article 32" of the agreement.

The arbitrator also made several findings with regard to his authority under Article 32 including that "the words 'otherwise change' are clear and unambiguous" and grant the arbitrator the authority to grant promotions as part of the remedy to resolve grievances. The arbitrator found that the remedy was consistent with past practices of parties under the agreement. The arbitrator also found that the Employer "never contended during the arbitration hearings that the language in Article 32 was not sufficiently worded to permit the Arbitrator to grant a promotion to remedy the grievances." Additionally, the arbitrator noted that he had "previously found" that the grievants were "well qualified based on merit and ability for promotion," as shown by evidence presented during the arbitration hearings.

SHOPO filed a motion to confirm the arbitrator's July 8, 2010 award arguing that the arbitrator's remedy "should be confirmed as a 'final and binding' decision that was issued

within the arbitrator's authority." The Employer opposed SHOPO's motion and filed a motion to vacate. On September 20, 2010, the circuit court issued orders resolving the parties' motions. The court granted in part and denied in part SHOPO's motion to confirm the award; as it had done previously, the court confirmed the arbitrator's "findings and decisions in all respects" but vacated based on the arbitrator's remedy. SHOPO timely filed a notice of appeal.

In a published opinion, the ICA first considered SHOPO's contention that the Employer was estopped from asserting that the arbitrator exceeded his authority in awarding promotions because the Employer failed to raise this argument during arbitration. The ICA rejected SHOPO's estoppel argument, distinguishing the UHPA II case from this case based primarily on the wording of the respective agreements. The ICA also found that the Employer contested the arbitrator's authority to promote the grievants during the arbitration hearings.

With regard to the remedy awarded by the arbitrator, the ICA concluded that pursuant to the agreement and HRS § 89-9(d), the arbitrator did not exceed his authority in awarding promotions and the circuit court erred in finding otherwise. In its analysis, the ICA considered the public policies set forth in HRS §§ 76-1 and 89-9 but did not expressly resolve whether the agreement was contrary to public policy. Accordingly, the

ICA affirmed in part and vacated in part the circuit court's August 6, 2009 and September 20, 2010 orders and remanded the case to the circuit court for confirmation of the arbitrator's decision in its entirety.

The Honorable Lisa M. Ginoza concurred and dissented in the decision, arguing that the arbitrator exceeded his authority in granting the remedy (ICA dissent). The Employer requests this court to adopt the analysis of the ICA dissent, which interpreted the agreement as reserving the right to promote solely to the Employer and to the exclusion of the arbitrator.

## II.    STANDARDS OF REVIEW

"[J]udicial review of an arbitration award is confined to 'the strictest possible limits,'" and a court may only vacate an award on the grounds specified in HRS § 658A-23 and modify or correct on the grounds specified in HRS § 658A-24. See Daiichi Haw. Real Estate Corp. v. Lichter, 103 Hawaiʻi 325, 336, 82 P.3d 411, 422 (2003). This standard applies to both the circuit court and the appellate courts. See id. (noting that HRS §§ 658-9 and -10 "also restrict the authority of [appellate courts] to review judgments entered by circuit courts confirming [or vacating] the arbitration awards" (quoting Mars Constructors, Inc. v. Tropical Enters., Ltd., 51 Haw. 332, 336, 460 P.2d 317, 319 (1969)).

11

The circuit court's "findings of fact will not be set aside unless they are clearly erroneous." Beneficial Haw., Inc. v. Casey, 98 Hawai'i 159, 167, 45 P.3d 359, 367 (2002).

> A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined 'substantial evidence' as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Daiichi, 103 Hawai'i at 337, 82 P.3d at 423 (citations omitted) (quoting Beneficial Haw., Inc. v. Kida, 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001)) (internal quotation marks omitted). We review the circuit court's conclusions of law under the right/wrong standard. Id.

### III. DISCUSSION

The Employer raises one issue in its Application for Writ of Certiorari, whether "the ICA gravely erred in holding that the Arbitrator did not exceed his powers under the applicable collective bargaining agreement . . . by ordering that the Grievants be promoted to the position of Sergeant and awarding the attendant back pay and benefits." The Employer argues that the Arbitrator exceeded his authority under the agreement in promoting the grievants and maintains that the agreement expressly reserves the right to promote to the Employer. The Employer also submits that the arbitrator's

12

awarding of back pay and promotions are in violation of public policy.

In response, SHOPO maintains that the ICA majority reached the correct decision and that the circuit court "contravened well established case law" in "second guessing" the arbitrator's interpretation of the collective bargaining agreement, ignoring the unambiguous language of the agreement, and disregarding the parties' long standing practice "that permitted the Arbitrator to resolve the grievances as he did."

## A.   The Arbitrator's Decision and Award Could Have Rested on an Interpretation of the Agreement.

In this case, the parties agreed to "final and binding" arbitration for the settlement of grievances.  "It is well settled that the legislature overwhelmingly favors arbitration as a means of dispute resolution."  Tatibouet, 99 Hawai'i at 234, 54 P.3d at 405 (quoting Leeward Bus Co. v. Honolulu, 58 Haw. 64, 71, 564 P.2d 445, 449 (1977)). Accordingly, the legislature narrowly constrained judicial review of arbitration awards in the HRS, Chapter 658A.  Under HRS § 658A-22 (Supp. 2001),[8] a party to an arbitration proceeding

---

[8]     HRS § 658A-22 provides the following:

> After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 658A-20 or 658A-24 or is vacated pursuant to section 658A-23.

may make a motion to a court for confirmation of an award. HRS § 658A-22 requires the court to confirm the order unless the award is modified or corrected under certain limited circumstances[9] or is vacated pursuant to HRS § 658A-23 (Supp. 2001).[10] The circumstances under which a circuit court may vacate an arbitration award are set forth in HRS § 658A-23,

---

[9] The award may be modified or corrected by the arbitrator pursuant to HRS § 658A-20 or by the court pursuant to HRS § 658A-24.

[10] HRS § 658A-23(a) provides the following:

Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

(1) The award was procured by corruption, fraud, or other undue means;

(2) There was:

   (A) Evident partiality by an arbitrator appointed as a neutral arbitrator;

   (B) Corruption by an arbitrator; or

   (C) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(3) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 658A-15, so as to prejudice substantially the rights of a party to the arbitration proceeding;

(4) An arbitrator exceeded the arbitrator's powers;

(5) There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under section 658A-15(c) not later than the beginning of the arbitration hearing; or

(6) The arbitration was conducted without proper notice of the initiation of an arbitration as required in section 658A-9 so as to prejudice substantially the rights of a party to the arbitration proceeding.

which includes vacation of an arbitration award if an "arbitrator exceeded the arbitrator's powers." Cf. Tatibouet, 99 Hawai'i at 234, 54 P.3d at 405 (discussing the limitations on judicial review of arbitration awards under HRS § 658-9 (1993) (repealed 2001)).

In determining whether an arbitrator has exceeded his or her authority under the agreement, "there should be no 'second guessing' by the court" of the arbitrator's interpretation of his or her authority so long as the arbitrator's interpretation "could have rested on an interpretation and application of the agreement."[11] Local Union 1260 Int'l Bhd. of Elec. Workers v. Hawaiian Tel. Co., 49 Haw. 53, 56, 411 P.2d 134, 136 (1966); UHPA I, 66 Haw. at 210, 659 P.2d at 719 (explaining that the issue of arbitrability should be decided by the arbitrator, rather than the court, because "the parties agreed to submit to the arbitrator" disputes of arbitrability); see also Haw. State Teachers Ass'n v. Univ. Lab. Sch., 132 Hawai'i 426, 432, 322 P.3d 966, 972 (2014) (upholding the principle that questions of arbitrability are reserved for

---

[11] Federal courts apply a similar standard: an arbitrator's award "is legitimate only so long as it draws its essence from the collective bargaining agreement." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960); see also W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers, 461 U.S. 757, 765 (1983) ("Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator.").

the arbitrator); UHPA III, 66 Haw. at 230, 659 P.2d at 731 ("It is the arbitrator's construction of the contract which was bargained for." (alterations omitted) (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)).

Consistent with our case law discussing the proper review of arbitration awards, the agreement in this case provided, "The award of the Arbitrator shall be accepted as final and binding. There shall be no appeal from the Arbitrator's decision by either party, if such decision is within the scope of the Arbitrator's authority . . . ." Accordingly, the outcome of this case depends on whether the arbitrator's interpretation of the scope of his authority "could have rested on an interpretation and application of the agreement." Hawaiian Tel. Co., 49 Haw. at 56, 411 P.2d at 136.

In this case, Article 32 of the agreement expressly grants the arbitrator the authority to "decide whether the Employer has violated, misinterpreted or misapplied any of the terms of this Agreement."[12] Article 32 further provides that

---

[12] Article 32 provides:

The Arbitrator's authority shall be to decide whether the Employer has violated, misinterpreted or misapplied any of the terms of this Agreement and in the case of any action which the Arbitrator finds unfair, unjust, improper or excessive on the part of the Employer, such action may be set aside, reduced or otherwise changed by the Arbitrator. The Arbitrator may, in the Arbitrator's discretion, award back pay to recompense in whole or in part, the employee

(continued . . .)

"any action which the Arbitrator finds unfair, unjust, improper or excessive on the part of the employer, such action may be set aside, reduced or <u>otherwise changed</u> by the Arbitrator." (Emphasis added).  Further, Article 32 gives the arbitrator the authority to "award back pay" and "return to the employee such other rights, benefits, and privileges or portions thereof as may have been lost or suffered."

Article 32 supports an interpretation that the arbitrator had the authority to award promotions and back pay in this case.  Article 32 grants the arbitrator the authority to determine violations of the agreement and to remedy such violations.  By granting promotions to the grievants, the arbitrator returned to the grievants "such other rights, benefits, and privileges" that were "lost or suffered" as a result of the nonpromotions, thus, "chang[ing]" the action of the Employer it found to violate the agreement.  Because the arbitrator's authority to grant promotions and back pay "could have rested on an interpretation and application of the agreement," the circuit court should not have "second guessed" the arbitrator's award in this case.  See <u>Hawaiian Tel. Co.</u>, 49 Haw. at 56, 411 P.2d at 136.  "Indeed, by giving the arbitrator

_____

(continued . . .)
for any salary or financial benefits lost, and return to the employee such other rights, benefits, and privileges or portions thereof as may have been lost or suffered.

the power to actually grant tenure or promotion, the collective bargaining agreement is made that much more meaningful, since 'the confidence of the workers in the equity of the agreement is strengthened when they know that any dispute over the meaning of the contract may be submitted to an impartial third party for decision.'" UHPA II, 66 Haw. at 223, 659 P.2d at 727 (quoting James M. Ringer, Note, Legality and Propriety of Agreements to Arbitrate Major and Minor Disputes in Public Employment, 54 Cornell L. Rev. 129, 135 (1968)).

The Employer urges this court to adopt the analysis of the ICA dissent, which found that the award of promotions exceeded the arbitrator's authority under Article 11 of the agreement. Article 11 reserves exclusively to the Employer "all management rights and authority, including the rights set forth in Section 89-9(d)(1)-(8), Hawaii Revised Statutes, except as specifically abridged or modified by this agreement." The ICA dissent seems to suggest that because Article 11 reserved the Employer's right to make promotions--"except as specifically abridged or modified"--the agreement must expressly state that the arbitrator has the authority to grant promotions. However, this interpretation of the agreement does not give appropriate judicial deference to the arbitrator's interpretation of the agreement and is contrary to the terms of the agreement itself.

18

Additionally, the ICA dissent references a court's authority to review whether the arbitrator exceeded its authority under the agreement and under HRS § 658A-23(a)(4) in responding to SHOPO's argument that the circuit court erred by substituting its interpretation of the agreement for that of the arbitrator.  The ICA dissent states that the agreement in this case is "even beyond the authority provided by HRS § 658A-23(a)(4)" because the agreement in this case "expressly contemplates that a party may seek judicial review when there is a question whether the Arbitrator exceeded his authority."[13] While it is true that HRS § 658A-23(a)(4) and the agreement authorize judicial review for a determination of whether or not the arbitrator exceeded its authority under the agreement, it does not follow that the court may substitute its own interpretation of the agreement for that of the arbitrator when making such a determination.

Further, we disagree with the ICA dissent's interpretation of the arbitrator's authority under the agreement.  The ICA dissent looked at Article 32 and Article 42 separately for express grants of such authority, while not

---

[13]    The agreement's provision that the arbitrator's decision be "final and binding" and that there shall be "no appeal" of an arbitrator's decision within the scope of the arbitrator's authority is consistent with HRS § 658A-23 and Hawai'i case law limiting judicial review of arbitration decisions.  Accordingly, the provision for judicial review under the agreement appears to be coextensive with HRS § 658A-23(a)(4).

19

considering the importance of reading the two provisions together.  See Leeward Bus Co., 58 Haw. at 68, 564 P.2d at 448 ("[A]n agreement should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase or clause." (quoting Ching v. Hawaiian Restaurants, Ltd., 50 Haw. 563, 565, 445 P.2d 370, 372 (1968))).  When read together, Article 47 and Article 32 make promotions subject to the grievance procedures of the agreement and, thus, grant the arbitrator the authority to "otherwise change" any action with relation to a promotion that the Arbitrator finds "unfair, unjust, improper or excessive."  Article 32 also specifically gives the arbitrator the authority to "award back pay" and "return to the employee such other rights, benefits, and privileges or portions thereof as may have been lost or suffered."

The arbitrator determined that the grievants were denied promotions "due to subjective, arbitrary and capricious promotional practices."  Under Article 32, the arbitrator was authorized to "return to" the grievants the right, benefit, or privilege of their promotions that they lost due to the improper interview procedure.  It would be illogical for the arbitrator to have authority over the promotion grievances yet have no authority to "otherwise change" the grieved action and "return

20

to" the grievants the privileges and benefits lost as a result of the nonpromotions.

An interpretation of the agreement that recognizes the arbitrator's authority to remedy the promotion grievances is further bolstered by the fact that the arbitrator's authority over the grievances was agreed to by the parties, affirmed by the circuit court, and not raised on appeal. Further, the arbitrator found that the remedy granted in this case was consistent with past practices of the parties under the agreement, and the record indicates that there were three to five positions that were open at the time of the arbitration hearing.[14]

For the reasons discussed above, the ICA majority correctly concluded that "the arbitrator's award did not exceed his authority and the circuit court erred in failing to so conclude."

### B. The Arbitrator's Decision and Award Does Not Violate Public Policy.

In its Application, the Employer asks this court to "set aside the ICA's holding pertaining to whether the Arbitration Decision violated public policy."

---

[14] This case therefore does not raise, and we do not address, a situation where an arbitrator's remedy would require an employer to establish a new position for a grievant.

21

Hawai'i case law recognizes "that there is a limited public policy exception to the general deference given arbitration awards."  Inlandboatmen's Union of the Pac. v. Sause Bros., Inc., 77 Hawai'i 187, 194, 881 P.2d 1255, 1262 (App. 1994); see also Gepaya v. State Farm Mut. Auto. Ins. Co., 94 Hawai'i 362, 366, 14 P.3d 1043, 1047 (2000).  This public policy exception is based on the exception recognized by the United States Supreme Court in United Paperworkers International Union v. Misco, Inc., 484 U.S. 29 (1987); see Sause Bros., 77 Hawai'i at 194, 881 P.2d at 1262 (adopting the public policy exception of Misco and directing that the exception should be applied under the guidelines set forth in Misco).

The Court in Misco established a framework for courts reviewing public policy claims.  First, the court must determine whether there is an "explicit, well defined, and dominant" public policy that is "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'"  See E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000) (quoting W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766 (1983)) (citing Misco, 484 U.S. at 43)); accord Sause Bros., 77 Hawai'i 187, 193, 881 P.2d 1255, 1261 (App. 1994).  Second, the court must determine whether the arbitration award itself is clearly shown to be "contrary" to the "explicit, well-defined, and dominant

22

public policy." See E. Associated Coal Corp., 531 U.S. at 62-63; Sause Bros., 77 Hawai'i 187, 194, 881 P.2d 1255, 1262 (App. 1994) (stating that the court must determine that "the violation of the public policy is clearly shown" in order for the public policy exception to apply (alterations omitted) (quoting W.R. Grace & Co., 461 U.S. at 766)).

We consider whether the arbitrator's award violates public policies with regard to the merit principles as set forth in HRS § 76-1 and the authorized scope of negotiations of collective bargaining agreements as expressed in HRS § 89-9(d).

First, "[t]he merit principle is the selection of persons based on their fitness and ability for public employment and the retention of employees based on their demonstrated appropriate conduct and productive performance." HRS § 76-1 (Supp. 2000). There is nothing in the record to suggest that the arbitrator's authority to grant promotions and back pay in this case violates the merit principle. To the contrary, the agreement is in accordance with the merit principle as it requires promotions to be based on "fair standards of merit and ability, consistent with applicable civil service statutes, rules and regulations and procedures." The arbitrator heard testimony with regard to the grievants' professional background and work performance, and the arbitrator found that "the grievant officers were well qualified based on merit and ability

23

for promotion to the rank of sergeant based on the evidence presented during the arbitration hearings."  Thus, the arbitrator's award in this case was not contrary to the merit principle.  Accordingly, there is no basis to support a finding that the arbitrator's authority to grant promotions and back pay was contrary to the public policy of promotions in accordance with the merit principle.

Second, HRS § 89-9, which pertains to the scope of negotiations for public sector collective bargaining, provides that an employer and union may not agree in collective bargaining to any provision "which would interfere with the rights and obligations of a public employer to" perform several listed functions including to "[h]ire, promote, transfer assign, and retain employees in positions."  While HRS § 89-9(d) expresses a policy that a collective bargaining agreement should not interfere with an employer's prerogative to make promotions, the provision expressly provides that this subsection "shall not preclude negotiations over the procedures and criteria on promotions . . . as a permissive subject of bargaining during collective bargaining negotiations."  Further, HRS § 89-9(d) states, "Violations of the procedures and criteria so negotiated may be subject to the grievance procedure in the collective bargaining agreement."

Thus, HRS § 89-9(d) expresses a policy to avoid interference through collective bargaining with an employer's function to make promotions, but the statute specifically states that this policy is to be balanced against a policy to encourage negotiations over the procedures and criteria on promotions that may be subject to grievance procedures. Accordingly, HRS § 89-9 does not include an "explicit, well defined, and dominant" public policy discouraging the arbitrator's award of promotions and back pay in this case.

The public policy to encourage negotiation over the procedures and criteria for promotions that is clearly expressed on the face of HRS § 89-9(d) is further bolstered by the history behind the 2007 amendment to the provision.[15] The legislature's 2007 amendments to HRS § 89-9(d) were made in light of United Public Workers v. Hanneman, 106 Hawai'i 359, 105 P.3d 236 (2005),

---

[15] The 2007 amendments added the following language:

This subsection shall not be used to invalidate provisions of collective bargaining agreements in effect on and after June 30, 2007, and shall not preclude negotiations over the procedures and criteria on promotions, transfers, assignments, demotions, layoffs, suspensions, terminations, discharges, or other disciplinary actions as a permissive subject of bargaining during collective bargaining negotiations or negotiations over a memorandum of agreement, memorandum of understanding, or other supplemental agreement.

Violations of the procedures and criteria so negotiated may be subject to the grievance procedure in the collective bargaining agreement.

2007 Haw. Sess. Laws Act 58, § 1 at 101 (emphasis added).

wherein the court held that management rights under HRS § 89-9(d) precluded collective bargaining over the City and County of Honolulu's unilateral decision to transfer refuse workers to a different employment location.  Under Hanneman, the scope of topics subject to negotiation cannot "infringe upon an employer's management rights under [HRS § 89-9(d)]."  Hanneman, 106 Hawai'i at 365, 105 P.3d at 242.  The purpose of the 2007 amendments was to clarify that management rights enumerated in HRS § 89-9(d) do not invalidate or preclude negotiations concerning agreements on procedures and criteria on promotions and other management functions.  See S. Stand. Comm. Rep. No. 889, in 2007 Senate Journal, at 1438.  The House Committee on Labor & Public Employment stated that "negotiations over procedures and criteria of promotions . . . are consistent with the underlying purpose of chapter 89, HRS."  H. Stand. Comm. Rep. No. 1465, in 2007 House Journal, at 1595.

Further, as the parties agreed before the arbitrator, SHOPO challenged the way in which the promotions were done and did not challenge the Employer's right to make promotions. Thus, the arbitrator's decision and award did not infringe on the Employer's authority to make promotions in accordance with the bargained for criteria and procedures and relevant law.  See UHPA II, 66 Haw. at 220-21, 659 P.2d at 725 (holding that HRS 89-9(d), which granted the employer the "exclusive jurisdiction

26

over matters such as setting the criteria for determining tenure, promotion, and other areas of faculty employment," did not prohibit the arbitrator "from actually granting tenure or promotion upon a finding of arbitrary or capricious conduct"). Thus, the arbitrator's award has not been clearly shown to be "contrary" to an "explicit, well-defined, and dominant public policy."

We thus conclude that the arbitration award in this case did not violate public policy.

**C.    Clarification of the Doctrine of Quasi-Estoppel.**

The ICA majority held that the Employer was not estopped from contesting the arbitrator's authority.  The ICA majority's ruling was based primarily on a distinction that it drew between this case and the UHPA II case, which is discussed below.

Under the doctrine of quasi-estoppel, a party is estopped from taking "a position inconsistent with a previous position if the result is to harm another."  UHPA II, 66 Haw. at 221, 659 P.2d at 725; see also, e.g., Godoy v. Haw. Cnty., 44 Haw. 312, 320, 354 P.2d 78, 82 (1960) ("But there is a species of equitable estoppel, sometimes called quasi-estoppel, which has its basis in election, waiver, acquiescence, or even acceptance of benefits and which precludes a party from asserting to another's disadvantage, a right inconsistent with a

27

position previously taken by him.  No concealment or misrepresentation of existing facts on the one side, no ignorance on the other, are necessary ingredients." (quoting Hartmann v. Bertelmann, 39 Haw. 619, 627-28 (Haw. Terr. 1952)).

In UHPA II, this court found that the doctrine of quasi-estoppel provided a basis for affirmation of an arbitrator's award of tenure and back pay to a grievant.  66 Haw. at 216-17, 659 P.2d at 723.  The UHPA II court found it significant that the parties contractually agreed that the arbitrator's decision would be "final and binding" and that the Employer agreed to arbitrate the tenure and promotions dispute. Id. at 221, 659 Haw. P.2d at 726.  The court explained that the Employer "could have either excluded subjects such as tenure and promotion from the agreement's arbitration provision altogether, or it could have made clear, at the outset of the arbitration proceedings, that it was not submitting to the arbitrator the power to actually grant tenure or promotion."  Id. at 221-22, 659 Haw. P.2d at 726.  UHPA II found that the grievant would have been "substantially disadvantaged in terms of time and money spent in the arbitration process and in litigation" if the employer were permitted to argue that the arbitrator never had

28

the power to resolve the grievances only after the arbitration award was not decided in its favor.[16]  Id.

The agreement in this case, like the agreement in UHPA II, provides for "final and binding" arbitration.  Also like the agreement in UHPA II, the agreement here does not exclude promotions from the arbitrator's powers.  Further, Article 47 of the agreement expressly provides requirements for promotions, and Article 32 gives the arbitrator the authority to "award back pay" and "return to the employee such other rights, benefits, and privileges or portions thereof as may have been lost or suffered."  Thus, the scope of the arbitrator's authority in this case is not significantly different from that of the arbitrator in UHPA II.

The ICA majority distinguished this case from UHPA II on the basis that the agreement in UHPA II "expressly gave the

_____

[16]    The court in UHPA II stated,

> After having contractually agreed that arbitration would be the last step in the grievance process and that the arbitrator's decisions would be "final and binding," and after agreeing to arbitrate these tenure and promotion disputes only to see the arbitration award go against it in each and every instance, the University now complains that the arbitrator never had the power to resolve these grievances in the first place. We find this complaint untenable.  The University could have either excluded subjects such as tenure and promotion from the agreement's arbitration provisions altogether, or it could have made clear, at the outset of the arbitration proceedings, that it was not submitting to the arbitrator the power to actually grant tenure or promotion.

66 Haw. at 221, 659 P.2d at 726.

29

arbitrator the right and power to 'substitute his judgment for that of the official' if the arbitrator found the official's decision to be arbitrary and capricious," while in this case the Employer retains the management rights under the agreement "except as specifically abridged or modified."  However, this is not a meaningful distinction because the UHPA II court's focus was on the parties' agreement to "final and binding" arbitration and the Employer's consent to arbitrate tenure and promotions.  See UHPA II, 66 Haw. at 221–22, 659 P.2d at 726.  Further, the ICA majority's comparison of the arbitrator's authority in UHPA II with the Employer's authority in this case does not support the ICA majority's distinction, particularly since the employer in UHPA II and the employer in this case retained similar authority over promotions.[17]

We note that the arbitrator in this case made an express finding that the Employer "never contended during the arbitration hearings that the language in Article 32 was not sufficiently worded to permit the Arbitrator to grant a promotion to remedy the grievances."  Nonetheless, the ICA majority made a contrary finding that the "Employer did contest the arbitrator's authority to actually promote the grievants."

_____

[17]     The employer in UHPA II had "exclusive jurisdiction over matters such as setting the criteria for determining tenure, promotion, and other areas of faculty employment."  UHPA II, 66 Haw. 214, 220, 659 P.2d 720, 725 (1983).

Because we find that the arbitrator acted within the scope of his authority under the agreement, we need not decide whether the doctrine of quasi-estoppel applies in this case and, therefore, do not address this conflict between the findings of the ICA majority and the arbitrator.

## IV.    CONCLUSION

Accordingly, the ICA's December 5, 2014 Judgment on Appeal is affirmed, but for the reasons set forth herein.

| | |
|---|---|
| Mauna Kea Trask<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Vladimir Devens<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

