NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000293
05-MAY-2022
07:52 AM
Dkt. 62 SO**

NO. CAAP-18-0000293

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE MATTER OF THE ARBITRATION BETWEEN

UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO,
Union-Appellee,
and
CITY & COUNTY OF HONOLULU, DEPARTMENT OF FACILITY MAINTENANCE,
ROADS MAINTENANCE DIVISION (CLASS GRIEVANCE, RE: DENIAL OF
TEMPORARY ASSIGNMENT); SECTIONS 1, 9, 11, 14, 16, 23; JM-09-07
(2009-060), Employer-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1SP171000377)

**SUMMARY DISPOSITION ORDER**
(By:  Hiraoka, Presiding Judge, Nakasone and McCullen, JJ.)

Employer-Appellant **City** and County of Honolulu,
Department of Facility Maintenance, Roads Maintenance Division
appeals from the: (1) "Order Granting Motion to Confirm
Arbitration Decision and Award, Entry of Judgment, and Other
Relief Filed on 11/22/17"; and (2) "Order Denying Motion to
Vacate Arbitration Decision and Award and/or to Modify or Correct
Award Filed on 12/27/17"; both entered by the Circuit Court of
the First Circuit on March 2, 2018.[1]  For the reasons explained
below, we affirm both orders.

---

[1]  The Honorable Gary W.B. Chang presided.

Union-Appellee United Public Workers, AFSCME, Local 646, AFL-CIO (**UPW**) is the exclusive bargaining representative of the City's employees in bargaining unit 1 (**BU1**).[2]  On June 25, 2009, UPW submitted a class grievance alleging that the City:

> is denying temporary assignment [to three supervisor positions[3]] to the qualified employee on duty in the class immediately below the class of the temporary assignment in the same or related series with the greatest workplace seniority because the employees are under investigation for alleged criminal activity with [sic] in the Street Sweeping Baseyard.

The collective bargaining agreement between and City and UPW BU1 (**CBA**) contained an agreement to arbitrate grievances that could not be resolved in two prior steps.  An arbitrator was selected on January 13, 2010.  Seven hearings were held between April 30, 2013, and August 7, 2017.  The arbitrator issued an "Arbitration Decision and **Award**" on November 17, 2017.

UPW initiated a circuit court **Special Proceeding** by filing a motion to confirm the Award on November 22, 2017.  The City filed a motion to vacate the Award on December 27, 2017.

---

[2]  Hawaii Revised Statutes (**HRS**) § 89-6 (2012) provides, in relevant part:

> (a)  All employees throughout the State within any of the following categories shall constitute an appropriate bargaining unit:
>
> > (1)  Nonsupervisory employees in blue collar positions;
> >
> > (2)  Supervisory employees in blue collar positions[.]
>
> . . . .
>
> (c) . . . In differentiating supervisory from nonsupervisory employees, class titles alone shall not be the basis for determination.  The nature of the work, including whether a major portion of the working time of a supervisory employee is spent as part of a crew or team with nonsupervisory employees, shall be considered also.

[3]  The City contends, and UPW does not disagree, that the supervisor positions at issue are covered by the collective bargaining agreement between the City and the Hawaiʻi Government Employees Association (**HGEA**) bargaining unit 2 (**BU2**) (supervisory employees in blue collar positions).

Both motions were heard on January 11, 2018.  The circuit court noted:

> We're here for the hearing on two motions: One, the Union's Motion to Confirm, and two is the Employer's Motion to Vacate.  I'm just going to have a consolidated hearing on both matters because they are pretty much reciprocal of one another.[4]

The circuit court entered orders granting UPW's motion to confirm and denying the City's motion to vacate on March 2, 2018.  This appeal followed.

The City raises two points of error: (1) the arbitrator exceeded her powers; and (2) the circuit court erred by denying the City's request to join the Hawaii Government Employees Association (**HGEA**) as a party to the Special Proceeding.

"Judicial review of an arbitration award is confined to the strictest possible limits, and a court may only vacate an award on the grounds specified in HRS § 658A-23[.]"[5]  In re Hawaiʻi State Tchrs. Ass'n, 140 Hawaiʻi 381, 391, 400 P.3d 582, 592 (2017) (cleaned up).  "[I]n reviewing an arbitration award, circuit courts are powerless to correct an arbitrator's findings of fact even if clearly erroneous, or an arbitrator's rulings on the law, even if wrong."  Nordic PCL Const., Inc. v. LPIHGC, LLC, 136 Hawaiʻi 29, 42, 358 P.3d 1, 14 (2015).

---

[4]     HRS § 658A-23(d) (2016) provides:

If the court denies a motion to vacate an award, it shall confirm the award unless a motion to modify or correct the award is pending.

[5]     Relevant to this appeal, HRS § 658A-23(a) (2016) provides:

Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

.  .  .  .

(4)   An arbitrator exceeded the arbitrator's powers[.]

### 1. The Award did not exceed the arbitrator's powers.

The City contends:

> The circuit court erred in confirming the Award (and in denying the vacation of the Award) in which the Arbitrator exceeded her power and authority by enforcing a 'past practice' in favor of non-supervisory UPW employees to be temporarily assigned [TA] to supervisory HGEA positions, thereby vitiating and rending null and of no force and effect the TA provision of the HGEA collective bargaining agreement that entitled HGEA supervisory employees to be temporarily assigned vacant HGEA positions.

In In re Hawaii Organization of Police Officers and Cnty. of Kaua‘i and Kaua‘i Police Dep't, 134 Hawai‘i 155, 338 P.3d 1170 (App. 2014), aff'd on other grounds, 135 Hawai‘i 456, 353 P.3d 998 (2015), we held:

> The scope of an arbitrator's authority is determined by agreement of the parties. An arbitrator must act within the scope of the authority conferred upon [them] by the parties and cannot exceed [their] power by deciding matters not submitted. Where an arbitrator has exceeded [their] powers . . . the resulting arbitration award must be vacated.

Id. at 159, 338 P.3d at 1174.

The CBA gives the arbitrator the following powers:

> **15.19 ARBITRABILITY.**
>
> **15.19a.** A grievance may not be arbitrated unless it involves an alleged violation, misinterpretation, or misapplication of a specific section of this Agreement.
>
> . . . .
>
> **15.20 b.2.** The Arbitrator shall be limited to deciding whether the Employer has violated, misinterpreted, or misapplied any of the sections of this Agreement.

The dispute submitted to the arbitrator was whether the City violated sections 1.05 and 16 of the UPW CBA "because the [City] denied temporary assignment to the qualified employee on duty in the class immediately below the class of the temporary

4

assignment in the same or related series with the greatest workplace seniority[.]"

Section 1.05 of the CBA provides:

> **CONSULT OR MUTUAL CONSENT.**
>
> The [City] shall consult the Union when formulating and implementing personnel policies, practices and any matter affecting working conditions. **No changes in** wages, hours or other **conditions of work** contained herein **may be made except by mutual consent**.

(emphasis added).

Section 16 of the CBA concerns seniority. Section 16.03 concerns temporary assignments:

> A temporary assignment is the assignment by the [City] and the assumption, without a formal change in position assignment, of all or a major portion of the significant duties and responsibilities of another position because: [the position is vacant or the incumbent is not available.]

Section 16.04 requires:

> **TEMPORARY ASSIGNMENTS SHALL BE MADE AS FOLLOWS:**
>
> **16.04a.**    **SAME SERIES PROCEDURE.**
> The qualified Employee at work in the class immediately below the class of the temporary assignment in the same series with the greatest Baseyard/Workplace or Institutional Workplace Seniority. If there is no qualified Employee at work in the next lower class in the same series, the procedure will be continued within the same series until the series has been exhausted.

The arbitrator found that during the summer of 2009, the City temporarily assigned HGEA BU2 members to open supervisor positions that had previously been temporarily filled by UPW BU1 members. The arbitrator concluded that the City violated "the mutual consent provision of Section 1.05 by the [City]'s unilateral change to the past practice and custom of making temporary assignments to BU 1 employees in the baseyard under Sections 16.03 and 16.04[.]" Accordingly, the arbitrator sustained the class grievance; ordered the City to stop unilaterally changing the way it made temporary supervisor

5

assignments; and ordered the City "to make whole affected employees for loss of pay and benefits for denial of temporary assignments from 2009 to the present[.]"  All of this was within the arbitrator's powers under the terms of the UPW BU1 CBA.[6]

The City argues that "[t]he [temporary assignment] provision of the UPW collective bargaining agreement details the implementation of **intra**-bargaining unit temporary assignments. It cannot and should have [sic] been used to bootstrap **inter**-bargaining unit temporary assignments that involved another union."  The CBA does not contain such a limitation; rather, it provides:

> **16.03**    A temporary assignment is the assignment by the [City] and the assumption, without a formal change in position assignment, of all or a major portion of the significant duties and responsibilities of ***another position*** because: [the position is vacant or the incumbent is not available.]

(emphasis added).  The City does not cite, nor do we find, any provision in the CBA, the Civil Service Law (HRS Chapter 76), or the Collective Bargaining in Public Employment law (HRS Chapter 89) that limits "another position" to positions previously filled by a BU1 member, or that excludes positions filled by a BU2 member.

The City argues that the Award violated "explicit, well defined and dominant" public policy, but cites only to an order of the Hawai'i Labor Relations Board (**HLRB**) directing the State, four counties, HGEA, and UPW to "engage in collective bargaining" to resolve conflicts over "the temporary assignments of UPW non-supervisory employees to HGEA supervisory positions."  The HLRB order — which denied UPW's motion to dismiss a case involving all of those parties — is not binding on us, nor does it support the proposition that the Award violated public policy.  The City concedes "[t]here are no appellate cases on point on this issue

---

[6]    The City does not contend that the arbitrator lacked the power to award a remedy.

because this issue has not reached the courts."  Nor did the Award purport to decide or declare — specifically or implicitly — public policy over labor union jurisdiction disputes; the HGEA BU2 collective bargaining agreement is not contained in the record, and neither HGEA nor the HGEA BU2 members who temporarily filled the supervisor positions during the summer of 2009 were parties to the arbitration.

The City raises another public policy argument; that the Award violated the City's management rights under HRS § 89-9(d).  The City maintains that the UPW BU1 members who would otherwise have been temporarily assigned to the open supervisor positions "were being criminally investigated by the Honolulu Police Department for overtime compensation fraud" and it was therefore a management right to not have "the proverbial fox . . . guard the hen house."  Even if the City had provided evidence substantiating its allegation about the criminal investigation, "management rights enumerated in HRS § 89-9(d) do not invalidate or preclude negotiations concerning agreements on procedures and criteria on . . . assignments[.]"  In re Hawaii Organization of Police Officers, 134 Hawaiʻi at 163, 338 P.3d at 1178 (cleaned up) (citing S. Stand. Comm. Rep. No. 889, in 2007 Senate Journal, at 1438 ("[t][he purpose of this measure is to amend [HRS § 89-9(d)] by clarifying that certain statutory actions shall not be used to invalidate collective bargaining agreements in effect on and after June 30, 2007, and such actions may be included in collective bargaining agreements.")).

The City argues that the arbitrator improperly applied res judicata and collateral estoppel.  That argument fails because even if the arbitrator made a clearly erroneous finding of fact (for example, that a claim or issue had previously been decided) or a wrong conclusion of law (for example, that claim or issue preclusion did or did not apply), that would not be grounds for a court to vacate the Award.  Nordic PCL, 136 Hawaiʻi at 42, 358 P.3d at 14.

7

Based upon the foregoing, we conclude that the Award did not exceed the arbitrator's powers.

### 2. The circuit court did not err by failing to join HGEA in the Special Proceeding.

The City contends: "The circuit court abused its discretion and committed error in denying the City's request to have HGEA join as a party in the Special Proceeding by operation of [Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule] 19(a)." The contention is without merit.

The City never moved to join HGEA in the Special Proceeding. The circuit court's order denying the City's motion to vacate noted that the City's request to join HGEA was made "in its reply brief dated January 8, 2017[,] and during oral argument on January 11, 2018[.]" The record does not show that the City filed a motion to join HGEA for the circuit court to grant or deny.

Even if the City had filed a motion to join HGEA in the Special Proceeding, HRCP Rule 81 provides:

> **APPLICABILITY.**
>
> **(a) To what proceedings not applicable.** Except as expressly otherwise provided in this Rule 81 or another rule of court, these rules shall not apply to the following proceedings (pursuant to specific provisions of the Hawaiʻi [sic] Revised Statutes when cited below) in any circuit court:
>
> . . . .
>
> > (5) Applications to a circuit court under chapter 658A, relating to arbitration, and proceedings thereon prior to judgment[.]

The City cites no authority other than HRCP Rule 19(a) to support its joinder argument.

The City's reply brief cites — for the first time — HRCP Rule 81(h), which provides in relevant part:

> **Order of Court.** In any proceeding . . . listed in subdivision (a) of Rule 81 the court **may** by order direct that any one or more of these rules, not otherwise

> applicable to said proceeding pursuant to this Rule 81,
> shall be applicable to said proceeding.

(emphasis added).  HRCP Rule 81(h) gives the circuit court discretion to apply HRCP Rule 19(a) to special proceedings under HRS Chapter 658A relating to an arbitration.  But the City did not file a motion under HRCP Rule 81(h) seeking leave to file a motion to join HGEA under HRCP Rule 19(a).  We cannot rule that the circuit court abused its discretion by denying a motion that was never made.

For the foregoing reasons, the "Order Granting Motion to Confirm Arbitration Decision and Award, Entry of Judgment, and Other Relief Filed on 11/22/17" and the "Order Denying Motion to Vacate Arbitration Decision and Award and/or to Modify or Correct Award Filed on 12/27/17" entered by the circuit court on March 2, 2018, are affirmed.

DATED:  Honolulu, Hawaiʻi, May 5, 2022.

On the briefs:

Ernest H. Nomura,
Deputy Corporation Counsel,
for Employer-Appellant.

Herbert R. Takahashi,
Rebecca L. Covert,
for Union-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge