**Electronically Filed**
**Supreme Court**
**SCWC-11-0000065**
**11-AUG-2017**
**10:03 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

IN THE MATTER OF THE ARBITRATION BETWEEN
HAWAI'I STATE TEACHERS ASSOCIATION,
Respondent/Union-Appellant,

and

STATE OF HAWAI'I, DEPARTMENT OF EDUCATION,
Petitioner/Employer-Appellee.

SCWC-11-0000065

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0000065; S.P. NO. 10-1-0165)

AUGUST 11, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

## I.   INTRODUCTION

At issue is whether the doctrine of sovereign immunity protects the State from an arbitrator's award of prejudgment interest. We hold that, under the facts of this case, it does not. Because judicial review of an arbitration award is confined

to the strictest possible limits, and because the arbitrator in this case reasonably interpreted the arbitration agreement in fashioning the award, we hold that the arbitrator did not exceed his authority in awarding prejudgment interest against the State. We also hold that the award of attorneys' fees and costs on appeal was proper.

Thus, we affirm the Intermediate Court of Appeals' (ICA) November 21, 2016 judgment on appeal, which 1) vacated in part the Circuit Court of the First Circuit's (circuit court) February 24, 2011 final judgment, 2) reversed the circuit court's January 4, 2011 orders, 3) affirmed the circuit court's January 31, 2011 order, and 4) granted Hawaiʻi State Teachers Association's (HSTA) request for fees and costs.

## II.  BACKGROUND

### A.  Arbitration Proceedings[1]

On July 18, 2008, Kathleen Morita (Morita or grievant), a public school teacher, was terminated from her job for allegedly smoking marijuana and possessing alcohol while in her classroom at Hauʻula Elementary School.  HSTA filed a grievance on Morita's behalf and an arbitration hearing was held pursuant to the collective bargaining agreement (the agreement) between HSTA and the Hawaiʻi State Department of Education (State or

---

[1]    Walter H. Ikeda presided over the arbitration proceedings.

Employer).

Article V of the agreement outlines the grievance procedure, which provides that a grievant may request arbitration. Article V.G.2.f provides the arbitrator with the authority to enter an award in favor of the grievant if the arbitrator finds that the Employer's actions were improper:

> When the arbitrator finds that any disciplinary action was improper, the action may be set aside, reduced or otherwise modified by the arbitrator. The arbitrator may award back pay to compensate the teacher wholly or partially for any salary lost. Such back pay award shall be offset by all other compensation received by the grievant(s) including but not limited to unemployment compensation or wages.

On May 7, 2010, the arbitrator issued a decision and award, which sustained the grievance because the State lacked just cause to terminate Morita. The arbitrator ordered that Morita be restored to her position at Hauʻula Elementary School and be given back wages "with interest at the rate of ten (10) percent per annum on any unpaid amounts that are due and owing." The arbitrator also noted that he would "retain limited jurisdiction for a period not to exceed 6 months from the date of this award to assure compliance with the award."

On July 28, 2010, HSTA filed a motion for final decision and award requiring the State to pay Morita $30,454.57 in backpay, plus ten percent interest until the amount was fully paid. In its memorandum in support of the motion, HSTA explained that there "has been no compliance with the remedial terms of the

3

award . . . as to back pay by Employer" and requested that the arbitrator enter a final decision in order to settle any remaining disputes over the calculation of the award between the parties.

On September 27, 2010, the arbitrator entered a compliance order.  In it, the arbitrator noted that the State had filed a July 22, 2010 motion to strike or vacate the interest portion of the award with the circuit court and that this motion was still pending at the circuit court level.[2]

As to the issues of backpay and interest (also labeled throughout the proceedings as prejudgment or backpay interest), the arbitrator offered the following explanation:

> While the Union has requested a final award and order which fixes the amount of backpay and interest, the Arbitrator has elected to treat it as a compliance matter pursuant to his continuing jurisdiction because the May 7, 2010 decision and award was final except for what normally would have been ministerial mathematical calculation.  As a general proposition, Arbitrators are authorized to proceed under the authority permitted by the collective bargaining agreement and the Uniform Arbitration Act, HRS, Chapter 658A.  As previously indicated in the order of June 16, 2010, the Arbitrator believes that he is acting in conformity tithe [sic] Collective Bargaining Agreement and the authority granted by HRS, Chapter 658A in the determination that any backpay award includes interest at the rate of 10 percent per annum.  The purpose of an award of backpay including interest is to "make whole" financially the Grievant had she not been terminated.  Elkouri & Elkouri, How Arbitration Works, 6th Ed. 2003, p. 1224.  Payment to the Grievant of wrongfully withheld pay without interest would not restore her whole as loss of use of funds for that period entailed either deprivation or additional costs to the Grievant if she had to borrow funds to replace lost wages while awaiting the results of her grievance.  The

---

[2]    The State's motion to strike is discussed in the following section.

4

> doctrine of interest assessed by an arbitrator as compensation or penalty to prevent further damages is demonstrated by <u>Morris Knudsen Company vs. Makahuena Corporation and Tea Pacific, Inc.</u>, 66 Haw. 663 (1983) and <u>Sussell vs. Civil Service Commission of the City & County of Honolulu</u>, 74 H,[sic] 599 (1993).

As such, the arbitrator reaffirmed his May 7, 2010 determination that Morita was entitled to interest on unpaid backpay, but left the calculation to the parties:

> The Grievant is entitled to a reimbursement of backpay of $25,169.05 excluding interest for the period from August 1, 2008 to May 31, 2010. She is also entitled to interest on any unpaid backpay at the rate of 10 percent per annum. Since the Employer has indicated the possibility of appealing at least the interest portion of the award, no amount is set forth as to accrued interest. If the Employer does not contest the principal amount of the backpay, it should be paid forthwith as it may be the source of the repayment by the Grievant of retirement benefits received from the State of Hawaii Retirement System. The calculation of accrued interest is left to the parties using financial management software. The calculation should assume the deficit in backpay accrued monthly from August 1, 2008 by dividing the aggregate deficit in backpay for each year by the number of months that the unpaid deficit remained unpaid multiplied by the rate of 10 percent per annum until paid.

## B.    Circuit Court Proceedings[3]

On May 18, 2010, HSTA filed a motion to confirm the arbitration award, entry of judgment and allowing costs and other appropriate relief with the circuit court. The State filed a response, arguing that Morita was not entitled to the awarded interest and opposing HSTA's request for attorneys' fees and costs.

Confusion appears to have arisen when the State filed

---

[3]    The Honorable Gary W.B. Chang presided.

two separate motions, which sought the same relief from the arbitrator's award of interest, but relied on different statutory grounds.  The first, filed on July 9, 2010,[4] was the State's motion to modify or correct the arbitration award (motion to modify award), in which the State sought to modify the portion of the arbitrator's decision that awarded prejudgment interest on the backpay.  This motion was brought pursuant to Hawaiʻi Revised Statutes (HRS) § 658A-24 (Supp. 2010).[5]

HSTA's motion to confirm and the State's motion to modify the award were heard on July 15, 2010.  At the hearing, the State also made an oral request to file a motion to vacate

_____

[4]    There is some discrepancy as to when this motion was filed.  The motion is dated July 8, 2010 but date stamped July 9, 2010.

[5]    HRS § 658A-24 (Supp. 2010), "Modification or correction of award," provides in full:

>    (a) Upon motion made within ninety days after the movant
>    receives notice of the award pursuant to section 658A-19 or
>    within ninety days after the movant receives notice of a
>    modified or corrected award pursuant to section 658A-20, the
>    court shall modify or correct the award if:
>        (1) There was an evident mathematical miscalculation
>        or an evident mistake in the description of a person,
>        thing, or property referred to in the award;
>        (2) The arbitrator has made an award on a claim not
>        submitted to the arbitrator and the award may be
>        corrected without affecting the merits of the decision
>        upon the claims submitted; or
>        (3) The award is imperfect in a matter of form not
>        affecting the merits of the decision on the claims
>        submitted.
>    (b) If a motion made under subsection (a) is granted, the
>    court shall modify or correct and confirm the award as
>    modified or corrected.  Otherwise, unless a motion to vacate
>    is pending, the court shall confirm the award.
>    (c) A motion to modify or correct an award pursuant to this
>    section may be joined with a motion to vacate the award.

the award.

The second of the State's written motions, filed on July 26, 2010,[6] was the State's motion to vacate in part the arbitration award (motion to vacate award), in which the State sought to vacate the portion of the arbitrator's decision that awarded prejudgment interest on the backpay. This motion was brought pursuant to HRS § 658A-23 (Supp. 2010).[7] On September 13, 2010, a hearing was held on the State's motion to

_____

[6]    There is some discrepancy as to when this motion was filed. There are two date stamps on the document, July 22, 2010 and July 26, 2010.

[7]    HRS § 658A-23 (Supp. 2010), "Vacating award," provides in part:

> (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
>     (1) The award was procured by corruption, fraud, or other undue means;
>     (2) There was:
>         (A) Evident partiality by an arbitrator appointed as a neutral arbitrator;
>         (B) Corruption by an arbitrator; or
>         (C) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
>     (3) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 658A-15, so as to prejudice substantially the rights of a party to the arbitration proceeding;
>     (4) An arbitrator exceeded the arbitrator's powers;
>     (5) There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under section 658A-15(c) not later than the beginning of the arbitration hearing; or
>     (6) The arbitration was conducted without proper notice of the initiation of an arbitration as required in section 658A-9 so as to prejudice substantially the rights of a party to the arbitration proceeding.

vacate award.  The circuit court orally granted the motion and vacated the portion of the award that gave Morita prejudgment interest.  Counsel for HSTA was not at the hearing.  Both parties assert that there was a service error and that HSTA did not receive notice of the hearing date until after the hearing.

On October 7, 2010, HSTA filed a motion for reconsideration of the State's motion to vacate award, arguing that HSTA did not receive notice of the hearing on the State's motion.  A hearing on HSTA's motion for reconsideration was held on November 22, 2010.  Both parties appeared and argued as to whether the doctrine of sovereign immunity applied when awarding prejudgement interest.  At the close of the hearing, the circuit court took the matter under advisement.  The following day, November 23, 2010, the circuit court entered a minute order denying HSTA's motion for reconsideration.

Meanwhile, on October 1, 2010, the circuit court entered three orders and one judgment:  1) Order Denying Employer's Oral Motion For Leave to File Motion to Vacate Award Dated May 7, 2010, Filed Orally on July 15, 2010; 2) Order Denying Employer's Motion to Modify or Correct Award Dated May 7, 2010, Filed on July 18, 2010;[8] 3) Order Granting in Part and

---

[8]     The circuit court appears to have erred in noting in the title of the order that this motion was filed on July 18, 2010.  The circuit court, in the
(continued...)

Denying in Part Motion to Confirm Arbitration Award, Entry of Judgment and Allowing Costs and Other Appropriate Relief Filed on May 18, 2010;[9] and 4) Judgment (October judgment).

The October judgment reads in its entirety as follows:

> Pursuant to the 1) order granting in part and denying in part motion to confirm arbitration award, entry of judgment and allowing costs and other appropriate relief filed on May 18, 2010, entered on OCT.- 1, 2010, 2) order denying Employer's motion to modify or correct award dated May 7, 2010, filed on July 18, 2010, entered on OCT.- 1, 2010, and 3) order denying Employer's motion for leave to file motion to vacate award dated May 7, 2010, filed orally on July 15, 2010, entered on OCT.- 1, 2010, Judgment is hereby entered in conformity with the arbitration award filed on May 18, 2010 in accordance with Section 658A-25(a), <u>Hawaii Revised Statutes</u>, in favor of the Hawaii State Teachers Association and against Employer, State of Hawaii, Department of Education.
> This judgment is entered as to all claims raised by the parties, and it resolves all claims by and against the parties in the above-entitled case. No claims or parties remain. Any and all remaining claims, if any, are dismissed with prejudice.

(Formatting altered.)

On October 11, 2010, HSTA filed a motion to alter and

---

[8](...continued)
text of the order, also notes that the motion was filed on July 8, 2010, which more accurately reflects the record. The circuit court offered the following explanation for denying the motion:

> The Employer relies on subsection 3 of Section 658A-24(a), <u>Hawaii Revised Statutes</u>, (HRS), for its motion and the Court finds no authority to modify or correct. The change sought by the Employer goes to the subject matter of the award. The question of the 10% interest as awarded by the arbitrator is part of the merits of the award and to modify or correct as sought by the Employer would alter the substance of the award.

[9]     The order granting in part HSTA's motion to confirm the arbitration award confirmed the May 7, 2010 decision and award of the arbitrator, entered judgment in accordance with the arbitration award, and denied without prejudice HSTA's request for attorneys' fees and costs. With note to the denial of the fees and costs, the circuit court explained that HSTA did not request a specific amount of fees and costs, and that HSTA could file another motion that would afford the State the opportunity to contest the amount.

9

amend the circuit court's October judgment (motion to amend) so that the judgment would either include the specific amount of backpay reflected in the arbitrator's compliance order or to confirm the arbitrator's compliance order. At the November 8, 2010 hearing on HSTA's motion to amend, the circuit court orally granted HSTA's motion and ordered the State to pay Morita backpay in the amount of $25,169.05. The court noted that HSTA's motion for reconsideration, which addressed the issue of the prejudgment interest, would be heard on November 22, 2010.

On January 4, 2011, the circuit court entered two written orders: 1) granting the State's motion to vacate the award as to the prejudgment interest, and 2) denying HSTA's motion for reconsideration.

On January 31, 2011, the circuit court entered its written order, entitled "Order Granting HSTA's Motion to Alter and Amend Judgment Entered October 1, 2010 or in the Alternative to Confirm Supplemental Arbitration Award Clarifying Award of May 7, 2010, Filed October 11, 2010." The order states:

> It is hereby ordered, adjudged, and decreed that the HSTA's motion to alter and amend judgment entered October 1, 2010 or in the alternative to confirm supplemental arbitration award clarifying award of May 7, 2010, is hereby granted. The judgment will be amended to state the Employer shall pay the employee $25,169.05.

(Formatting altered.) The order also addresses the issue of retirement benefits, and then concludes with a final paragraph

10

that an amended judgment would be filed at a later time.  The

final paragraph, originally typed, states the following:

> An amended judgment consistent with this order <u>will not be filed until the Court has ruled on the other matters pending in the case, i.e., the HSTA's request for attorney fees and costs and the HSTA's Motion for Reconsideration of Employer's Motion to Vacate in Part Award Dated May 7, 2010, Filed July 26, 2010 which will be heard on November 22, 2010.</u>

(Emphasis added.)  The portion underlined above was subsequently

crossed out and in its place is the following handwritten

sentence:  "An amended judgment consistent with this order shall

be filed at an appropriate time."

On February 24, 2011, the circuit court entered a final

judgment, which reads as follows:

> Pursuant to the 1) Order Granting In Part And Denying In Part Motion To Confirm Arbitration Award, Entry Of Judgment And Allowing Costs And Other Appropriate Relief Filed On May 18, 2010, entered on October 1, 2010, 2) Order Denying Employer's Motion To Modify Or Correct Award Dated May 7, 2010, Filed On July 18, 2010, entered on October 1, 2010, 3) Order Denying Employer's Motion For Leave To File Motion To Vacate Award Dated May 7, 2010, Filed Orally On July 15, 2010, entered on October 1, 2010, 4) Minute Order on Decision Regarding HSTA's Motion to Allow Attorney's Fees and Costs, filed January 3, 2011, 5) Order Denying HSTA's Motion For Reconsideration Of Employer's Motion To Vacate In Part Award Dated May 7, 2010, filed January 4, 2011, 6) Order Granting Employer's Motion To Vacate In Part Award Dated May 7, 2010, filed January 4, 2011, <u>Final Judgment is hereby entered in accordance with Section 658A-25(a) Hawaii Revised Statutes, in favor of Hawaii State Teachers Association (HSTA) and against Employer, State of Hawaiʻi, Department of Education (DOE) on the reinstatement and back pay to the grievant in conformity with the arbitration award filed on May 18, 2010, and in favor of the DOE and against HSTA on the 10% interest on the back pay in the arbitration award and on HSTA's request for fees.</u>
> This final judgment is entered as to all claims raised by the parties, and it resolves all claims by and against the parties in the above-entitled case.  No claims or parties remain.

11

(Emphasis added.)

## C.   ICA Proceedings

On appeal, HSTA argued that the circuit court exceeded its authority in vacating the interest portion of the arbitration award because the doctrine of sovereign immunity was not implicated in this case.[10]

### 1.   The ICA's 2013 Opinion

On November 26, 2013, the ICA issued a published opinion in which it:  1) vacated the circuit court's February 24, 2011 final judgment; 2) reversed the circuit court's January 4, 2011 orders (order granting State's motion to vacate award, and the order denying HSTA's motion for reconsideration); and 3) dismissed HSTA's appeal of the circuit court's January 31, 2011 order granting HSTA's motion to alter and to amend the October 1, 2010 judgment.  Haw. State Teachers Ass'n v. State Dep't of Educ., 131 Hawaiʻi 301, 312, 318 P.3d 591, 602 (App. 2013), vacated, CAAP-11-0000065, 2014 WL 4548491, at *1 (Haw. Ct. App. Sept. 15, 2014) (HSTA I).

The ICA's opinion held, inter alia, that the circuit court erred when it vacated the portion of the arbitration award

---

[10]   On February 3, 2011, HSTA filed its first notice of appeal from the circuit court's January 4, 2011 orders, which was docketed as CAAP-11-0000065. On March 9, 2011, HSTA filed a second notice of appeal from the circuit court's February 24, 2011 final judgment, which was docketed as CAAP-11-0000140.  The ICA consolidated these appeals under CAAP-11-0000065.

pertaining to interest, concluding that "[n]either sovereign immunity nor the statutory prohibition against the award of pre-judgment interest against the State are implicated here."  Id. at 302, 318 P.3d at 592.

On September 15, 2014, the ICA entered an order vacating the opinion sua sponte, "[i]n light of the Hawaiʻi Supreme Court's Opinion in Association of Condominium Homeowners of Tropics at Waikele v. Sakuma, 131 Hawaiʻi 254, 319 P.3d 94 (December 17, 2013)."  Haw. State Teachers Ass'n v. State Dep't of Educ., CAAP-11-0000065, 2014 WL 4548491, at *1 (Haw. Ct. App. Sept. 15, 2014).  The order further stated that a "new opinion shall be filed."  Id.

## 2.  **The ICA's 2016 Opinion**

On September 30, 2016, the ICA issued an unpublished memorandum opinion.  Haw. State Teachers Ass'n v. State Dep't of Educ., CAAP-11-0000065, 2016 WL 5719745, at *1 (Haw. Ct. App. Sept. 30, 2016) (HSTA II).  This opinion, other than resolving the procedural issues raised by Sakuma, was substantially similar to its 2013 opinion in its analysis and disposition of the issues.

Before reaching HSTA's points on appeal, the ICA first addressed two preliminary questions:  1) whether the ICA had appellate jurisdiction to review all of the issues on appeal, and

13

2) whether the circuit court had the authority to proceed to enter orders and a second judgment after it entered the October 1, 2010 judgment.  Id. at *6.

In addressing the first question, the ICA first concluded that the October judgment was "a final and appealable judgment" pursuant to HRS §§ 658A-25 and 658A-28.  Id.  Next, the ICA examined whether there was a timely appeal from the October judgment.  Id.  The ICA noted that neither party timely appealed the judgment, but that HSTA timely filed a post-judgment motion-- its motion to amend the October judgment.  Id.  The ICA further explained that, under Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 4(a)(3), the circuit court failed to enter an order within ninety days after the date that HSTA's motion to amend was filed. Id. at *6-7.  In HSTA I, the ICA concluded that under HRAP Rule 4(a)(3), HSTA's motion to amend was deemed denied on January 10, 2011 and that the parties would have had thirty days from that date to timely file an appeal from the October judgment.  Id. at *7.  The following excerpt from HSTA II explains why this conclusion was incorrect:

> However, in Sakuma, the majority opinion held that when a timely post-judgment motion for reconsideration is deemed denied, it does not trigger a thirty-day deadline for filing a notice of appeal until thirty days after the entry of an order disposing of the motion. . . . Thus, the HSTA's Motion to Amend 10/1/10 Judgment was not "deemed denied" on January 10, 2011 (as we previously had held), and the January 31, 2011 Order Granting HSTA's Motion to Amend 10/1/10 Judgment constitutes the effective disposition on this motion. Finally, the January 31, 2011 Order Granting HSTA's Motion

14

> to Amend 10/1/10 Judgment specifically states that: "An amended judgment consistent with this order shall be filed at an appropriate time." This judgment appears to be the 2/24/11 Judgment, which expressly enters judgment on six orders . . . [and] the HSTA timely filed a Notice of Appeal from the 2/24/11 Judgment.

Id. Thus, the ICA concluded that it had appellate jurisdiction over all of the issues raised in HSTA's appeal. Id.

In addressing the second question, the ICA examined HRS Chapter 658A, which sets out the framework for judicial action of arbitration proceedings, and explained that the framework does not contemplate the convoluted procedural posture of this case:

> HRS Chapter 658A does not contemplate a case like this one, where one party secures an order confirming an award, and the court enters final judgment on the confirmation order, while the other party later secures an order vacating in part the same award, without challenging the court's entry of final judgment on the confirmation award.
> We cannot speculate as to why the Circuit Court entered the 10/1/10 Judgment notwithstanding the parallel requests for relief. We also cannot speculate as to why the State failed to seek relief from the 10/1/10 Judgment.
>
> . . . .
>
> HRS § 658A-23 provides statutory authority for relief from an arbitration award, but not from a final judgment on an order confirming an arbitration award. In order to seek relief in the Circuit Court from a final judgment entered pursuant to HRS § 658A-25(a), such as the 10/1/10 Judgment, the State had to file a timely motion to alter or amend the judgment. It did not. Under these circumstances, we must conclude that the Circuit Court was no longer authorized to enter an irreconcilably inconsistent order based on the State's Motion to Vacate Award. See Wong, 79 Hawaiʻi at 29-30, 897 P.2d at 956-57. On this basis alone, we conclude that the Circuit Court erred when it entered the Order Partially Vacating Award and the Order Denying HSTA's Motion for Rehearing.

Id. at *8-9. As such, the ICA concluded that the circuit court did not have authority to enter subsequent orders or another

15

judgment after the October judgment.  Id. at *9.

Despite arriving at this conclusion, the ICA went on to analyze the substantive claims raised on appeal.  The ICA determined that, even if the circuit court could have vacated in part the award, the circuit court erred in doing so in this case because the State expressly waived sovereign immunity with respect to Morita's grievance.  Id.  The ICA explained that Morita's grievance was a contract claim pursuant to the collective bargaining agreement and that, as such, the State "waived its immunity with respect to the submission of the claim to binding arbitration."  Id.

The ICA examined the collective bargaining agreement, which provided that the "arbitrator may award back pay to compensate the teacher wholly or partially for any salary lost," and determined that it was "clear from the record of the arbitration proceedings that the Arbitrator interpreted this contract provision to allow an award to include interest on back pay in order to 'wholly' compensate a teacher for lost salary." Id.  The ICA concluded that the arbitrator did not exceed his powers in this regard and that "[e]ven if he incorrectly construed the agreement or misinterpreted applicable law, he acted within his power to interpret the agreement and fashion a remedy in accordance with his interpretation."  Id. at *10

16

(citing <u>Daiichi Haw. Real Estate Corp. v. Lichter</u>, 103 Hawaiʻi 325, 336, 82 P.3d 411, 422 (2003)).

Citing <u>Kenneth H. Hughes, Inc. v. Aloha Tower Development, Corp.</u>, 654 F. Supp. 2d 1142, 1149 (D. Haw. 2009), the ICA further concluded that neither the doctrine of sovereign immunity nor the statutory prohibition against awards of prejudgment interest against the State prevented the arbitrator from awarding interest against the State. <u>Id.</u> Therefore, the ICA held that the circuit court erred in vacating that part of the arbitrator's award. <u>Id.</u>

As such, the ICA entered the following order:

> For the foregoing reasons, we: (1) vacate in part the Circuit Court's February 24, 2011 Final Judgment; (2) reverse the Circuit Court's January 4, 2011 orders, the Order Granting Employer's Motion to Vacate in Part Award Dated May 7, 2010, and the Order Denying HSTA's Motion for Reconsideration of Employer's Motion to Vacate in Part Award Dated May 7, 2010; and (3) affirm the Circuit Court's January 31, 2011 Order Granting HSTA's Motion to Alter and to Amend Judgment Entered October 1, 2010 or in the Alternative to Confirm Supplemental Arbitration Award Clarifying Award of May 7, 2010, Filed October 11, 2010. This case is remanded to the Circuit Court for further proceedings consistent with this Memorandum Opinion.

<u>Id.</u> at *11.

On October 12, 2016, the ICA entered an order granting in part and denying in part HSTA's request for attorneys' fees and costs filed on December 20, 2013. The ICA awarded HSTA fees in the amount of $13,696.33 pursuant to HRS § 658A-25(c) and

17

costs in the amount of $371.30 pursuant to HRS § 685A-25(b).[11] The ICA noted that HSTA "may submit a supplemental motion for costs within (5) days from the date of this order."

On October 17, 2016, HSTA filed a supplemental motion for expenses, requesting an additional $24.08 for the costs of ordering a transcript of the November 8, 2010 proceeding. On November 9, 2016, the ICA granted HSTA's October 17, 2016 supplemental motion for expenses, awarding HSTA an additional $24.08 in costs.

On November 21, 2016, the ICA entered its judgment on appeal pursuant to its September 30, 2016 memorandum opinion, October 12, 2016 order granting in part and denying in part HSTA's request for attorneys' fees and costs, and November 9, 2016 order granting HSTA's supplemental motion for expenses.

---

[11]    HRS § 658A-25 (2016), "Judgment on award; attorney's fees and litigation expenses," provides in full:

> (a) Upon granting an order confirming, vacating without directing a rehearing, modifying, or correcting an award, the court shall enter a judgment in conformity therewith. The judgment may be recorded, docketed, and enforced as any other judgment in a civil action.
> (b) A court may allow reasonable costs of the motion and subsequent judicial proceedings.
> (c) On application of a prevailing party to a contested judicial proceeding under section 658A-22, 658A-23, or 658A-24, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

18

## III.   STANDARDS OF REVIEW

## A.   Judicial Review of Arbitration Awards

"[J]udicial review of an arbitration award is confined to 'the strictest possible limits,' and a court may only vacate an award on the grounds specified in HRS § 658A-23 and modify or correct on the grounds specified in HRS § 658A-24." State of Haw. Org. of Police Officers (SHOPO) v. County of Kauaʻi, 135 Hawaiʻi 456, 461, 353 P.3d 998, 1003 (2015) (alteration in original) (quoting Daiichi, 103 Hawaiʻi at 336, 82 P.3d at 422). "This standard applies to both the circuit court and the appellate courts." Id.

> Judicial review of an arbitration award is limited by the following precepts:
>
> First, because of the legislative policy to encourage arbitration and thereby discourage litigation, arbitrators have broad discretion in resolving the dispute. Upon submission of an issue, the arbitrator has authority to determine the entire question, including the legal construction of terms of a contract or lease, as well as the disputed facts. In fact, where the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact.
>
> Second, correlatively, judicial review of an arbitration award is confined to the strictest possible limits. An arbitration award may be vacated only on the four grounds specified in HRS § 658-9 and modified and corrected only on the three grounds specified in HRS § 658-10. Moreover, the courts have no business weighing the merits of the award.
>
> Third, HRS §§ 658-9 and -10 also restrict the authority of appellate courts to review judgments entered by circuit courts confirming or vacating the arbitration awards.

19

Schmidt v. Pac. Benefit Servs., Inc., 113 Hawaiʻi 161, 165-66, 150 P.3d 810, 814-15 (2006) (citing Daiichi, 103 Hawaiʻi at 336, 82 P.3d at 422).

## IV.  DISCUSSION

The State presents both procedural and substantive arguments in support of its position that the ICA erred in vacating the circuit court's judgment and upholding the arbitrator's award of interest against the State.  Additionally, the State takes issue with the ICA's award of appellate fees and costs to HSTA.

## A.  Procedural Issues

The State argues that the ICA erred in concluding that the circuit court was not authorized to enter orders and judgments that were irreconcilable with its October judgment. The State provides four grounds for this argument:  1) this issue was not raised before the ICA by either party; 2) the October judgment was not final; 3) subsequent outstanding issues rendered the October judgment non-final; and 4) HSTA's motion to alter or amend the October judgment rendered the October judgment non-final.

### 1.  The ICA did not err in considering an issue not raised by the parties on appeal.

The State first argues that the ICA improperly reached

20

an issue that was not raised by the parties during the circuit court or appellate proceedings.  Specifically, the State contends that the "ICA decided this case primarily on the procedural issue of whether the 10/1/10 Judgment had binding effect on and superseded the subsequent orders in the case," but that neither of the parties raised this as an issue in their briefings before the ICA.

> HRS § 641-2(b) (2016) provides:
>
> The appellate court <u>may correct any error appearing on the record</u>, but need not consider a point that was not presented in the trial court in an appropriate manner.  No judgment, order, or decree shall be reversed, amended, or modified for any error or defect, unless the court is of the opinion that it has injuriously affected the substantial rights of the appellant.

(Emphasis added.)  <u>See also</u> HRAP Rule 28(b)(4)(D) (2016) ("Points not presented in accordance with this section will be disregarded, except that the appellate court, <u>at its option, may notice a plain error not presented</u>." (emphasis added)).

Thus, while an appellate court need not consider a point not properly raised on appeal, it is within its discretion to consider and correct an error not raised.  Additionally, as a matter of jurisdiction, this issue needed to be addressed before the ICA could consider the other issues.  As such, the ICA did not err in considering the issue of the October judgment even though neither party raised it as a point of error.

**2.    The ICA did not err in concluding that the October judgment was a final and appealable judgment.**

Second, the State argues that, even if the ICA could raise the October judgment issue <u>sua sponte</u>, "the ICA erred in giving the [October judgment] binding effect because it was not in fact a final judgment." According to the State, the October judgment "was only a non-final, interim judgment."

HRS Chapter 658A provides statutory authority for courts to enter judgments on arbitration awards. HRS § 658A-25(a) (Supp. 2010) reads in full: "Upon granting an order confirming, vacating without directing a rehearing, modifying, or correcting an award, the court shall enter a judgment in conformity therewith. The judgment may be recorded, docketed, and enforced as any other judgment in a civil action." Additionally, Hawaiʻi Rules of Civil Procedure (HRCP) Rule 58 (2010) provides in part that the "filing of the judgment in the office of the clerk constitutes the entry of the judgment; and the judgment is not effective before such entry."

The October judgment, filed on October 1, 2010, reads in full as follows:

> Pursuant to the 1) order granting in part and denying in part motion to confirm arbitration award, entry of judgment and allowing costs and other appropriate relief filed on May 18, 2010, entered on OCT.- 1, 2010, 2) order denying Employer's motion to modify or correct award dated May 7, 2010, filed on July 18, 2010, entered on OCT.- 1, 2010, and 3) order denying Employer's motion for leave to file motion to vacate award dated May 7, 2010, filed orally on July 15, 2010, entered on OCT.- 1, 2010, <u>Judgment is hereby entered in conformity with the arbitration award filed on</u>

22

> May 18, 2010 in accordance with Section 658A-25(a), Hawaii Revised Statutes, in favor of the Hawaii State Teachers Association and against Employer, State of Hawaii, Department of Education.
> This judgment is entered as to all claims raised by the parties, and it resolves all claims by and against the parties in the above-entitled case. No claims or parties remain. Any and all remaining claims, if any, are dismissed with prejudice.

(Formatting altered) (emphasis added).

It is unclear how the October judgment could be interpreted as anything other than a final judgment. It was titled "JUDGMENT," entered in accordance with HRS § 658A-25(a), which provides authority for courts to enter judgments on arbitration awards, and filed on October 1, 2010 pursuant to HRCP Rule 58. Additionally, the language of the judgment is plain and unambiguous. The judgment states in no uncertain terms: "[j]udgment is hereby entered in conformity with the arbitration award . . . in favor of [HSTA] and against [the State]"; "judgment is entered as to all claims . . . and resolves all claims"; "[n]o claims or parties remain"; and "[a]ny and all remaining claims, if any, are dismissed with prejudice." Given its procedural conformity and clear, unambiguous language, the October judgment cannot be interpreted as anything other than what it was entitled--a judgment. See Wohlschlegel v. Uhlmann-Kihei, Inc., 4 Haw. App. 123, 130, 662 P.2d 505, 511 (1983) ("Obviously, a court order which is unambiguous and certain on its face leaves no room for construction."). As such, the State's argument that the October judgment was merely a "non-

23

final, interim judgment" has no basis in the law or facts.

> **3.  The ICA did not err in concluding that the October judgment was final despite the State's contention that "outstanding issues" existed.**

Third, the State argues that, even if the October judgment appeared to be initially final, the existence of outstanding issues rendered it non-final.  The State relies on Contrades v. Reis, 112 Hawai'i 367, 145 P.3d 910 (App. 2006), for this argument.

In Contrades, the plaintiff (John) filed an action against a property owner, alleging co-ownership of a parcel of land.  Id. at 368, 145 P.3d at 911.  After the circuit court entered an order and judgment in favor of the defendant, two significant filings were made:  1) John filed a timely motion for reconsideration that stayed the finality of the judgment, and 2) another party (Louise) filed a motion to intervene as a counterclaim defendant.[12]  Id.  The circuit court orally granted Louise's motion to intervene before entering a written order denying John's motion for reconsideration.  Id. at 368-69, 145 P.3d at 911-12.  Now a party to the case, Louise moved to set aside the court's judgment, arguing that it was no longer a final judgment pursuant to HRCP Rule 58 because it did not resolve all issues and claims.  Id. at 369, 145 P.3d at 912.  Additionally,

---

[12]     Louise contended that she was a co-owner of and had an interest in the subject property.  Id. at 368 n.3, 145 P.3d at 911 n.3.

24

both Louise and John filed notices of appeal from the circuit court's judgment. <u>Id.</u> The circuit court denied Louise's motion to set aside the judgment. <u>Id.</u> at 370, 145 P.3d at 913.

On appeal, the ICA explained that "a judgment, order, or decree may not be appealed unless it is final" and that "[g]enerally, a judgment, order, or decree is not final unless it completely adjudicates all the claims or rights and liabilities of all the parties." <u>Id.</u> (quoting <u>Sturkie v. Han</u>, 2 Haw. App. 140, 145-46, 627 P.2d 296, 301 (1981)). Then, the ICA concluded that:

> prior to the time Louise and John filed their notices of appeal, Louise had become a party. When Louise and John filed their notices of appeal, Louise was a party but her defenses and affirmative defenses remained undecided. All claims against all parties not having been finally decided when the notices of appeal were filed, we do not have appellate jurisdiction.

<u>Id.</u> at 371, 145 P.3d at 914. Therefore, the ICA dismissed the appeal for lack of appellate jurisdiction. <u>Id.</u>

The State argues that the <u>Contrades</u> case "is similar to the present case" and points out that, in <u>Contrades</u>, the existence of an intervening party with new claims after the filing of the judgment destroyed the judgment's finality. However, the current case can be distinguished from <u>Contrades</u> in a number of ways. First, <u>Contrades</u> involved an intervening party who raised new claims after the judgment was filed. The circuit court granted Louise's motion to intervene before disposing of

25

the motion for reconsideration; as a matter of law, the judgment did not resolve all claims in the Contrades case.

In contrast, in the current case, subsequent to the October judgment, there were no new parties or new claims. Instead, new motions were filed seeking a different disposition of the same claims. Additionally, the State's motion to vacate award and motion to modify award were both filed in July of 2010, before the circuit court entered its October judgment. The hearing on the State's motion to modify was held in July, and the hearing on the State's motion to vacate was held in September, both before the October judgment. Unlike in Contrades, where the court was unaware of another party's claims until a motion to intervene was filed, the circuit court in the current case knew of the State's arguments regarding the arbitrator's award of interest before it entered the October judgment as to "all claims raised by the parties."

Thus, unlike in Contrades, no new parties or claims were brought to the attention of the court prior to the judgment becoming final. The State's argument that "outstanding issues" eviscerated the finality of the October judgment is unpersuasive.

4.  **The ICA erred in concluding that the circuit court did not have the authority to enter a subsequent judgment after HSTA filed a motion to amend; however, such error was harmless because the ICA also addressed the substantive issues.**

Finally under this point, the State argues that, even if the October judgment was initially final, it was subsequently set aside or rendered non-final by HSTA's motion to alter or amend.

This argument has merit.  The procedural history of this case, although convoluted, clearly shows that the circuit court entered a subsequent final judgment in February 2011, and that this final judgment was properly entered after an appropriate motion by HSTA.

Parties have many tools at their disposal in dealing with an unfavorable judgment.  For instance, pursuant to HRCP Rule 59, a party may petition for a new trial or file a motion to alter or amend a judgment.  Specifically, HRCP Rule 59(e) (2000) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."  Additionally, pursuant to HRAP Rule 4(a)(1) (2016), a party may file a notice of appeal "within 30 days after entry of the judgment or appealable order."

While neither party appealed the October judgment, HSTA did file a timely post-judgment motion pursuant to HRCP Rule

27

59(e) seeking to amend the October judgment.  This motion was filed on October 11, 2010, within the ten day window mandated by HRCP Rule 59(e).  On January 31, 2011, the circuit court entered an order granting HSTA's motion to amend the October judgment.[13] While this order did not touch on the interest issue, it did note that "[a]n amended judgment consistent with this order shall be filed at an appropriate time."  On February 24, 2011, the circuit court entered a final judgment, which expressly entered judgment on six orders:

> Pursuant to the 1) Order Granting In Part And Denying In Part Motion To Confirm Arbitration Award, Entry Of Judgment And Allowing Costs And Other Appropriate Relief Filed On May 18, 2010, entered on October 1, 2010, 2) Order Denying Employer's Motion To Modify Or Correct Award Dated May 7, 2010, Filed On July 18, 2010, entered on October 1, 2010, 3) Order Denying Employer's Motion For Leave To File Motion To Vacate Award Dated May 7, 2010, Filed Orally On July 15, 2010, entered on October 1, 2010, 4) Minute Order on Decision Regarding HSTA's Motion to Allow Attorney's Fees and Costs, filed January 3, 2011, 5) Order Denying HSTA's Motion For Reconsideration Of Employer's Motion To Vacate In Part Award Dated May 7, 2010, filed January 4, 2011, 6) Order Granting Employer's Motion To Vacate In Part Award Dated May 7, 2010, filed January 4, 2011, <u>Final Judgment is hereby entered in accordance with Section 658A-25(a) Hawaii Revised Statutes, in favor of Hawaii State Teachers Association (HSTA) and against Employer, State of Hawaiʻi, Department of Education (DOE) on the reinstatement and back pay to the grievant in conformity with the arbitration award filed on May 18, 2010, and in favor of the DOE and against HSTA on the 10% interest on the back pay in the arbitration award and on HSTA's request for fees.</u>
> This final judgment is entered as to all claims raised by the parties, and it resolves all claims by and against the parties in the above-entitled case.  No claims or parties remain.

(Emphasis added.)

---

[13]    The ICA's <u>HSTA II</u> opinion explained that, under this court's decision in <u>Sakuma</u>, the January 31, 2011 order constituted the effective disposition of HSTA's motion.  <u>HSTA II</u>, 2016 WL 5719745, at *7.

28

Thus, HSTA's motion to amend the October judgment essentially opened the door for the circuit court to enter another judgment, one that was unfavorable to HSTA.  See Wong v. Wong, 79 Hawaiʻi 26, 30, 897 P.2d 953, 957 (1995) ("Once a valid judgment is entered, the only means by which a circuit court may thereafter alter or amend it is by appropriate motion under HRCP 59(e).").  As such, the ICA erred in concluding that the circuit court lacked authority to enter the February judgment.

However, regardless of whether the ICA erred in ultimately concluding that the October judgment was the final judgment in this case, such an error is harmless because the ICA then went on to address the substantive claims:  "Even assuming, arguendo, that the Circuit Court could have vacated in part the Award, after entering the 10/1/10 Judgment on the Order Confirming Award, we conclude that the Circuit Court erred in doing so in this case."  HSTA II, 2016 WL 5719745, at *9.  The ICA subsequently provided an in-depth analysis for this conclusion.  Id. at *9-10.

As such, our disposition of this case turns on the ICA's analysis and ultimate conclusion as to the substantive issues, as detailed in the following section.

**B.   The Arbitrator's Award of Prejudgment Interest**

The State argues that even if the ICA did not err on

29

the procedural issues, it did err in its resolution of the substantive issues. According to the State, the ICA erred in upholding the arbitrator's award of prejudgment interest for two reasons. First, the State contends that the ICA erred when it concluded that the award of prejudgment interest did not violate the doctrine of sovereign immunity. Second, the State contends that the ICA erred in not applying the public policy exception to arbitrations. As such, the State asserts that the circuit court properly vacated the arbitrator's award of prejudgment interest.

Before addressing the State's substantive arguments here, an overview of the statutory framework for vacating an arbitration award provides useful context.

"[J]udicial review of an arbitration award is confined to the 'strictest possible limits,' and a court may only vacate an award on the grounds specified in HRS § 658A-23 and modify or correct on the grounds specified in HRS § 658A-24." SHOPO, 135 Hawaiʻi at 461, 353 P.3d at 1003 (alteration in original) (quoting Daiichi, 103 Hawaiʻi at 336, 82 P.3d at 422).

HRS § 658A-23 provides six grounds that a court can rely on when vacating an arbitration award:

> (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
>     (1) The award was procured by corruption, fraud, or other undue means;
>     (2) There was:
>         (A) Evident partiality by an arbitrator appointed as a neutral arbitrator;

30

> (B) Corruption by an arbitrator; or
> (C) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
> (3) An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 658A-15, so as to prejudice substantially the rights of a party to the arbitration proceeding;
> (4) An arbitrator exceeded the arbitrator's powers;
> (5) There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under section 658A-15(c) not later than the beginning of the arbitration hearing; or
> (6) The arbitration was conducted without proper notice of the initiation of an arbitration as required in section 658A-9 so as to prejudice substantially the rights of a party to the arbitration proceeding.

In this case, the relevant subsection of this statute is part (a)(4) because the State contends that the arbitrator's interest award "exceeded the arbitrator's powers." "In determining whether an arbitrator has exceeded his or her authority under the agreement, 'there should be no second guessing by the court' of the arbitrator's interpretation of his or her authority so long as the arbitrator's interpretation 'could have rested on an interpretation and application of the agreement.'" SHOPO, 135 Hawaiʻi at 463, 353 P.3d at 1005 (quoting Local Union 1260 Int'l Bhd. of Elec. Workers v. Hawaiian Tel. Co., 49 Haw. 53, 56, 411 P.2d 134, 136 (1966)).

We now address the State's specific arguments regarding the arbitrator's award of prejudgment interest.

1.  **The ICA correctly concluded that the State waived its sovereign immunity in the arbitration proceedings.**

"The doctrine of sovereign immunity 'refers to the

31

general rule, incorporated in the Eleventh Amendment to the United States Constitution, that a state cannot be sued in federal court without its consent or an express waiver of its immunity.  The doctrine also precludes such suits in state courts.'" Nelson v. Hawaiian Homes Comm'n, 130 Hawaiʻi 162, 168, 307 P.3d 142, 148 (2013) (quoting Sierra Club v. Dep't of Transp., 120 Hawaiʻi 181, 225-26, 202 P.3d 1226, 1270-71 (2009)). See also Taylor-Rice v. State, 105 Hawaiʻi 104, 109, 94 P.3d 659, 664 (2004) ("[T]he State's liability is limited by its sovereign immunity, except where there has been a 'clear relinquishment' of immunity and the State has consented to be sued." (quoting Bush v. Watson, 81 Hawaiʻi 474, 481, 918 P.2d 1130, 1137 (1996))). When determining whether the State has waived its sovereign immunity, Hawaiʻi has adopted the following guidance from federal law:

> (1) a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign; (2) a waiver of sovereign immunity must be unequivocally expressed in statutory text; (3) a statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; (4) it is not a court's right to extend the waiver of sovereign immunity more broadly than has been directed by the [legislature]; and (5) sovereign immunity is not to be waived by policy arguments[.]

Kaleikini v. Yoshioka, 129 Hawaiʻi 454, 467, 304 P.3d 252, 265 (2013) (alteration in original) (quoting Taylor-Rice, 105 Hawaiʻi at 110, 94 P.3d at 665).

The State argues that the ICA erred in holding that the

State had waived its sovereign immunity with respect to the arbitrator's award of interest against the State.  According to the State, the ICA's decision regarding sovereign immunity directly conflicts with HRS § 661-8 (1993),[14] and two Hawaiʻi cases:  Taylor-Rice and Garner v. State Dep't of Educ., 122 Hawaiʻi 150, 223 P.3d 215 (App. 2009).  The State contends that these two cases held that a general waiver of sovereign immunity is not enough to specifically waive sovereign immunity as to prejudgment interest and that "any waiver of sovereign immunity is to be strictly construed in favor of the State."

In Taylor-Rice, this court considered the following question in the context of a tort case:  "Whether Appellee State of Hawaiʻi, as a joint and several judgment debtor to [the plaintiffs] under [HRS §] 663-10.9 . . . must pay statutory interest on the full value of the judgment per [HRS] § 478-3, or may pay only limited interest under section 662-8?"  105 Hawaiʻi at 109, 94 P.3d at 664 (alteration in original).  This court concluded that the State was not required to pay prejudgment interest for three reasons.  First, this court noted that "the

---

[14]    HRS § 661-8 (1993) provides that "[n]o interest shall be allowed on any claim up to the time of the rendition of judgment thereon by the court, unless upon a contract expressly stipulating for the payment of interest, or upon a refund of a payment into the 'litigated claims fund' as provided by law." This court has held that this statute immunizes the State against awards of interest unless the State has expressly or statutorily waived its sovereign immunity.  Chun v. Bd. of Trs. of Emps.' Ret. Sys., 106 Hawaiʻi 416, 433, 106 P.3d 339, 356 (2005).

State was *not* found to be jointly and severally liable for pre-judgment interest on the plaintiffs' damages." Id. at 110, 94 P.3d at 665. Second, this court explained that the plaintiffs waived this claim because they did not challenge the circuit court's failure to hold the State liable for prejudgment interest. Id. at 111, 94 P.3d at 666. Finally, this court noted that "HRS § 662-2 provides in clear and unambiguous language that 'the State . . . shall not be liable for interest prior to judgment'" and that this "constitutes a plain *reservation* of immunity with respect to pre-judgment interest on judgments rendered against the State." Id.

Similarly, in Garner, the ICA held that the State had not waived its sovereign immunity from an award of prejudgment interest in a case brought by a class action of substitute teachers seeking backpay. 122 Hawaiʻi at 162-63, 223 P.3d at 227-28. The circuit court held that the doctrine of sovereign immunity did not bar the plaintiffs' claim for breach-of-contract damages, but that it did bar the plaintiffs' claim for prejudgment interest. Id. at 156, 223 P.3d at 221. The ICA affirmed the circuit court on these issues. Citing HRS § 661-8, which provides that "[n]o interest shall be allowed on any claim [against the State] up to the time of the rendition of judgment thereon by the court," the ICA determined that the circuit court

34

did not err in denying the substitute teachers' request for prejudgment interest.  Id. at 163, 223 P.3d at 228.

While both Taylor-Rice and Garner hold that prejudgment interest cannot be awarded against the State in court proceedings, neither of these cases address the issue of prejudgment interest in arbitration proceedings.  As such, they are distinguishable from the case before us.  This court has not reached the specific issue presented in the current case; however, other jurisdictions, including the federal district court of Hawaiʻi, have considered this issue.

In Kenneth H. Hughes, Inc. v. Aloha Tower Development, Corp., 654 F. Supp. 2d 1142 (D. Haw. 2009), the United States District Court for the District of Hawaiʻi (district court) considered an issue almost identical to the one before this court.  Hughes involved an arbitration award for damages relating to a contract dispute between the State of Hawaiʻi and a Texas corporation, Hughes, over the development of the Aloha Tower complex in Honolulu.  Id. at 1144-45.  After the project failed, Hughes filed a demand for arbitration pursuant to their Development Agreement, which required that disputes be brought before a mediator or arbitrator within the jurisdiction of the Federal Arbitration Act (FAA).  Id. at 1145.  The arbitrator awarded Hughes over $900,000 in reliance damages, over $270,000

35

in pre-award interest, and more than $60,000 in attorneys' fees and costs.  Id.  The State filed a motion to vacate or modify the arbitration award with the district court, arguing, inter alia, that the award of interest violated the State's sovereign immunity.

Before addressing the issues before it, the district court explained that the FAA "provides limited circumstances under which a federal court may vacate or modify a binding arbitration award" and that "[t]his authority is extremely narrow and designed to preserve due process but not to permit unnecessary intrusion into private arbitration procedures."  Id.  The district court also noted that 9 U.S.C. § 10(a)(4) provides that a federal court may vacate an arbitration award "where the arbitrators *exceeded their powers*, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  Id. at 1146.  The district court further explained that the "Ninth Circuit has interpreted Section (4) of the FAA, when an arbitrator exceeds its powers, to encompass situations where an arbitrator's decision is 'completely irrational' or exhibits a 'manifest disregard of law.'"  Id. (quoting Kyocera Corp. v. Prudential-Bache Trade Servs., 341 F.3d 987, 997 (9th Cir. 2003)).

In analyzing the State's sovereign immunity claim, the

36

district court construed the State's argument to be that the arbitrator exceeded his power under 9 U.S.C. § 10(a)(4) of the FAA.  Id. at 1148.  The district court explained that, in order to prevail, the State "must demonstrate that the arbitrator's decision to include interest was 'completely irrational' or exhibited a 'manifest disregard of law' in violation of the State's sovereign immunity protections."  Id. at 1148-49.  The district court concluded that the State "fail[ed] to meet this exceedingly high burden" for the following reasons.  Id. at 1149.

First, the district court explained that, while Hawaiʻi law does prohibit courts from awarding prejudgment interest, there is no Hawaiʻi law that prohibits arbitrators from making such awards:

> Respondent relies on case law and Hawaii statute regarding pre- and postjudgments made in a court of law as evidence of the arbitrator's error.  But the arbitrator's decision is not a judgment of a court of law.  Hawaii Revised Statutes ("HRS") section 661-8, relied on by Respondent, states that:  "No interest shall be allowed on any *claim* up to the time of the rendition of *judgment thereon by the court*, unless upon a contract expressly stipulating for the payment of interest."  The arbitration demand was not a claim and the award was not a judgment by the court, and therefore HRS § 661-8 is not controlling.

Id.

Second, the district court determined that the State "explicitly availed itself of arbitration."  Id.  The district court explained that the agreement that the State and Hughes entered into stated that "any claims or disputes, not resolved in

37

good faith, may be brought before a mediator or arbitrator within the jurisdiction of the FAA."  Id.  As such, the district court determined that "the arbitrator did not manifestly disregard the law when determining that the State waived sovereign immunity as to interest in conjunction with its waiver as to damages."  Id. The district court explained its reasoning for this determination:

> Because the FAA explicitly lists the grounds upon which a court may vacate, courts will not find a manifest disregard of the law where an arbitrator merely interprets or applies the governing law incorrectly, and confirmation is required even if an arbitrator makes an erroneous finding of fact. . . . Rather, "it must be clear from the record that the arbitrators recognized the applicable law and then ignored it."

Id. at 1146 (quoting Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 832 (9th Cir. 1995)).

Although not controlling, Hughes is persuasive for three reasons.  First, the FAA's statutory framework analyzed in Hughes is nearly identical to that of Hawaii's Uniform Arbitration Act.  For instance, under both the FAA and HRS Chapter 658A, courts may vacate arbitration decisions where, inter alia, "the arbitrators exceeded their powers."  9 U.S.C. § 10(a); see also HRS § 658A-23(a)(4).  Similarly, under both the FAA and HRS Chapter 658A, courts may modify or correct an arbitration award on three grounds:  where there was a mathematical miscalculation of the award, where there was an award on a claim or matter not submitted to the arbitrator, or

38

where the award was "imperfect in matter of form not affecting the merits of the controversy."  9 U.S.C. § 11; see also HRS § 658A-24(a).

In both Hughes and the current case, the State claimed that the arbitrator had exceeded his authority in awarding the prevailing party prejudgment interest.  According to the district court, an arbitrator exceeds its powers only when the arbitrator's decision is "completely irrational" or "exhibits a manifest disregard for the law."  Hughes, 654 F. Supp. 2d at 1146.  Although Hawaiʻi courts use a different standard for determining whether an arbitrator has exceeded his or her powers, the standard is similar in that it strongly curtails the court's ability to vacate an arbitrator's award on such grounds:  "In determining whether an arbitrator has exceeded his or her authority under the agreement, 'there should be no second guessing by the court' of the arbitrator's interpretation of his or her authority so long as the arbitrator's interpretation 'could have rested on an interpretation and application of the agreement.'"  SHOPO, 135 Hawaiʻi at 463, 353 P.3d at 1005 (quoting Local Union 1260, 49 Haw. at 56, 411 P.2d at 136).  As such, although the district court relied, in part, on the FAA in reaching its decision, Hawaii's arbitration law mirrors the federal law in important ways.

Second, the district court's analysis of the applicability of HRS § 661-8 to arbitration proceedings is reasonable and supported by the statutory framework of HRS Chapter 658A.  The language of HRS § 661-8 clearly states that interest shall not be awarded against the State through a "judgment thereon by the court."  HRS § 661-8 does not state that an arbitrator is prohibited from awarding prejudgment interest against the State.  This reading is supported by HRS § 658A-21(c) (Supp. 2010), which provides that arbitrators are authorized to award remedies a court might be prohibited from granting:

> As to all remedies other than those authorized by subsections (a) and (b), <u>an arbitrator may order such remedies as the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding.  The fact that such a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under section 658A-22 or for vacating an award under section 658A-23</u>.

(Emphasis added.)  Thus, HRS § 661-8 appears to be inapplicable in the arbitration context under the facts of this case.

Third and finally, as in <u>Hughes</u>, the State in the current case availed itself of the arbitration proceedings.  The district court in <u>Hughes</u> noted that the State "explicitly availed itself of arbitration in paragraph 21 of the Development Agreement," which stated that "*any* claims or disputes, not resolved in good faith, may be brought before a mediator or arbitrator within the jurisdiction of the FAA."  <u>Hughes</u>, 654 F. Supp. 2d at 1149.

40

Similarly, in the current case, the State was a party to the collective bargaining agreement, which explicitly provided for disputes to go to arbitration and stated that "[t]he arbitrator may award back pay to compensate the teacher wholly or partially for any salary lost."  This court has recognized that "arbitrators have the authority to make an award of interest as *part of the determination of the total amount of compensation* to which the prevailing party is entitled" and that prejudgment interest is "an element of complete compensation."  Hamada v. Westcott, 102 Hawaiʻi 210, 217, 74 P.3d 33, 40 (2003) (quoting Kalawaia v. AIG Haw. Ins. Co., 90 Hawaiʻi 167, 172-73, 977 P.2d 175, 180-81 (1999)).[15]  Thus, under Hawaiʻi law, the arbitrator's interpretation of "wholly compensate" was a reasonable reading of the agreement and the arbitrator did not exceed his authority in awarding prejudgment interest against the State.  See also State v. Alaska Pub. Emps. Ass'n, 199 P.3d 1161, 1165 (Alaska 2008) ("Considering the closeness of this question, the policy favoring effective arbitration, and the fairness of awarding interest, we

[15]     This court in Kalawaia concluded that "where the entire dispute is submitted to arbitration and pre-award interest is not specifically excluded by contract, arbitrators have the authority to make an award of interest as part of the determination of the total amount of compensation to which the prevailing party is entitled."  90 Hawaiʻi at 173 n.11, 977 P.2d at 181 n.11. This court explained that this conclusion "is sensible because the award of interest is an element of compensation, and the entire dispute has been submitted to arbitration to determine the amount of compensation due to the injured party."  Id.  The Kalawaia holding supports our conclusion in the present case, as pre-award interest was not specifically excluded by the arbitration agreement.

are unable to conclude that the arbitrator's decision to award prejudgment interest against the State was gross error."); John Rocchio Corp. v. Town of Coventry, 919 A.2d 418, 419-20 (R.I. 2007) (upholding an arbitrator's award of prejudgment interest against a town after noting that the court has limited authority to vacate an arbitration award).

Given the broad discretion afforded to arbitrators and the strict limits confining judicial review of arbitration awards, the State's argument that the arbitrator exceeded his powers is unavailing. For these reasons, the ICA did not err in concluding that the State waived its sovereign immunity in the arbitration proceedings, even as to the issue of interest.

**2.    The ICA correctly concluded that the public policy exception to arbitrations does not apply in this case.**

The State argues that the ICA also erred when it "ignored the public policy exception" to arbitration awards. The State contends that sovereign immunity is an explicit public policy and that the violation of the public policy exception was "clearly shown" when "the arbitrator awarded pre-judgment interest despite the fact that the Collective Bargaining Agreement did not 'expressly' provide for interest and despite the rule requiring strict construction of waiver."

Hawaiʻi recognizes a "limited public policy exception to the general deference given arbitration awards."

42

Inlandboatmen's Union of the Pac. v. Sause Bros., 77 Hawaiʻi 187,
194, 881 P.2d 1255, 1262 (App. 1994).  Quoting the Supreme Court
of the United States, the ICA explained the exception:

> A court's refusal to enforce an arbitrator's award . .
> . because it is contrary to public policy is a specific
> application of the more general doctrine, rooted in the
> common law, that a court may refuse to enforce contracts
> that violate law or public policy. [The 'public policy'
> exception] derives from the basic notion that no court will
> lend its aid to one who founds a cause of action upon an
> immoral or illegal act, and is further justified by the
> observation that the public's interests in confining the
> scope of private agreements to which it is not a party will
> go unrepresented unless the judiciary takes account of those
> interests when it considers whether to enforce such
> agreements.

Id. at 193, 881 P.2d at 1261 (quoting United Paperworkers Int'l
Union v. Misco, Inc., 484 U.S. 29, 42 (1987)).  The public policy
exception is applicable only in cases where enforcing an
arbitration award or contract would involve illegality or violate
public policy.  SHOPO, 135 Hawaiʻi at 465-67, 353 P.3d at 1007-
09; see also Inlandboatmen, 77 Hawaiʻi at 194, 881 P.2d at 1262
(providing examples of Hawaiʻi courts applying the public policy
exception).

The public policy exception is inapplicable in this
case.  We have already determined in the previous section that
the State waived its sovereign immunity as to the arbitration
proceedings.  Additionally, we have determined that the
arbitrator operated within his considerable discretion when he
interpreted the collective bargaining agreement to include an
award of prejudgment interest.  Thus, an arbitrator's reasonable

43

award against the State when the State has availed itself of arbitration and waived its sovereign immunity is not against public policy or illegal.  As such, the ICA did not err in dismissing the State's contention that the public policy exception to arbitration awards should apply in this case.

## C.   Attorneys' Fees and Costs on Appeal

"In contrast to compensation awarded to a party, the well-accepted 'American rule' is that 'in absence of contract or statute a litigant has no inherent right to have his [or her] attorney's fees paid by his [or her] opponent.'"  Hamada, 102 Hawaiʻi at 217, 74 P.3d at 40 (alteration in original) (quoting Larsen v. Pacesetter Sys. Inc., 74 Haw. 1, 51, 837 P.2d 1273, 1297 (1992)); see also Sierra Club, 120 Hawaiʻi at 218, 202 P.3d at 1263 ("[P]ursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses.  This general rule, however, is subject to a number of exceptions: attorney's fees are chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent.")

In the current case, the ICA awarded HSTA fees and costs incurred at the appellate level pursuant to HRS § 658A-25. The State asserts that the ICA erred in this regard because HRS § 658A-25 does not provide for an award of fees and costs at the

appellate level.[16]  This is an issue of first impression for this court.

> **1.    The ICA did not err in awarding fees and costs pursuant to HRS § 658A-25.**

HRS § 658A-25 (2016), "Judgment on award; attorney's fees and litigation expenses," provides in full:

> (a) Upon granting an order confirming, vacating without directing a rehearing, modifying, or correcting an award, the court shall enter a judgment in conformity therewith. The judgment may be recorded, docketed, and enforced as any other judgment in a civil action.
> (b) A court may allow reasonable costs of the motion and subsequent judicial proceedings.
> (c) On application of a prevailing party to a contested judicial proceeding under section 658A-22, 658A-23, or 658A-24, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

The State points out that "court" is defined as "any district or circuit court of competent jurisdiction in this State, unless otherwise indicated."  HRS § 658A-1 (2016).  The State contends that HRS § 658A-25(b) and (c), when read in conjunction with the definition section found in HRS § 658A-1,

---

[16]    The State presents two other arguments under this section.  First, the State argues that HSTA should not have prevailed on appeal and is therefore not entitled to fees and costs.  Because we held in the previous section that the ICA did not err in concluding that HSTA was the prevailing party on appeal, we do not address this argument further.  Second, the State argues that sovereign immunity protects the State against an award of attorneys' fees and costs.  This argument also fails because HRS § 658A-25 expressly allows for an award of fees and costs to the prevailing party in a contested judicial proceeding.  The State availed itself of HRS Chapter 658A when it entered into an arbitration agreement with HSTA; this serves as a statutory waiver of the State's sovereign immunity with regard to attorneys' fees and costs under the Chapter as well.  See Sierra Club, 120 Hawaiʻi at 228-29, 202 P.3d at 1273-74 (holding that a statutory waiver of the State's sovereign immunity as to the underlying claim also waives the State's sovereign immunity as to attorneys' fees resulting from the litigation of that claim).

provide for an award of fees and costs only at the circuit or district court level.

However, the legislative history reveals that the statute was not intended to be interpreted so narrowly. The Hawaiʻi legislature enacted Chapter 658A in 2001 in order to "standardize Hawaii's arbitration laws with those used in other states by replacing the current statutory chapter on arbitration and awards with the Uniform Arbitration Act." Conf. Comm. Rep. No. 115, in 2001 House Journal, at 1093, 2001 Senate Journal, at 905. Under its original iteration in 2001, "court" was defined as "the circuit court of the appropriate judicial circuit in this State, unless otherwise indicated." 2001 Haw. Sess. Laws Act 265, § 1 at 810. In 2006, the legislature amended the definition to include district courts for the following reasons:

> Under the existing laws, the district courts have exclusive jurisdiction over civil claims in which the disputed amount is $10,000 or less. However, the circuit courts have exclusive jurisdiction over disputes subject to arbitration regardless of the amount in dispute. Many disputes subject to arbitration are well below the $10,000 limit at which the district courts would normally have jurisdiction. The legislature finds that this is not an economical or efficient use of judicial resources and it discourages the use of arbitration in the area of small disputes. Therefore, the mere existence of an arbitration agreement should not impact which court has jurisdiction over civil claims.
> The purpose of this Act is to give the district courts jurisdiction over civil actions subject to arbitration agreements where the amount in dispute is less than $10,000, unless the arbitration is subject to chapter 89, chapter 377, or the National Labor Relations Act.

2006 Haw. Sess. Laws Act 72, § 1 at 128.

The legislative history shows that the legislature, in defining "court," was interested in articulating which court had jurisdiction over the arbitration proceedings when the litigation was initiated; nothing in the legislative history indicates that the legislature intended that "court" be limited to the district or circuit courts after these initial proceedings were appealed.

This interpretation is supported by the commentary to the 2000 Revised Uniform Arbitration Act (UAA), which HRS Chapter 658A is modeled after. Under the UAA, "court" is defined as "a court of competent jurisdiction in this State." Unif. Arbitration Act § 1 (Nat'l Conference of Comm'rs on Unif. State Laws 2000). Significantly, the commentary to this section explains that "[d]ifferent States determine which court in its system has jurisdiction over arbitration matters <u>in the first instance</u>." UAA § 1 cmt. n.3 (emphasis added). As such, the UAA directs states to define "court" in order to resolve the issue of which court, district or circuit, a party turns to when initially contesting an arbitration award.

Additionally, commentary to UAA § 25[17] explains the

---

[17] HRS § 658A-25(c) was modeled after UAA § 25(c) and the two sections are nearly identical. UAA § 25(c) provides:

> On [application] of a prevailing party to a contested judicial proceeding under Section 22, 23, or 24, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

47

policy behind allowing courts to award attorneys' fees and costs in a contested judicial proceeding.  Notably, the policy articulated in the commentary applies equally to trial and appellate courts reviewing arbitration awards:

> Section 25(c) promotes the statutory policy of finality of arbitration awards by adding a provision for recovery of reasonable attorney's fees and reasonable expenses of litigation to prevailing parties in contested judicial actions to confirm, vacate, modify or correct an award.  <u>Potential liability for the opposing parties' post-award litigation expenditures will tend to discourage all but the most meritorious challenges of arbitration awards.</u>  If a party prevails in a contested judicial proceeding over an arbitration award, Section 25(c) allows the court discretion to award attorney's fees and litigation expenses.

UAA § 25 cmt. n.3 (emphasis added).  As such, attorneys' fees serve the purpose of discouraging a party from a nonmeritorious challenge to an arbitration award; this holds true even for appellate proceedings, as other jurisdictions have noted.

For instance, in <u>Blitz v. Beth Isaac Adas Israel Congregation</u>, 720 A.2d 912, 920 (Md. 1998), the Court of Appeals of Maryland concluded that, under a statute substantially similar to HRS § 658A-25, "the prevailing party is entitled to recover attorneys' fees incurred both at trial and on appeal in confirming and enforcing an arbitration award."  In making this decision, the Maryland court noted that there was a "significant difference" between the initial arbitration proceedings, where attorneys' fees are only allowed if provided for in the arbitration agreement, and the subsequent confirmation

proceedings. <u>Id.</u> at 917. In the confirmation proceedings, the Maryland court explained that the UAA specifically provides for attorneys' fees because such a policy encourages speedy resolutions of arbitration disputes. <u>Id.</u> at 917-18. The Maryland court also noted that other jurisdictions have recognized the importance of preventing drawn-out confirmation proceedings:

> The interpretations of our sister states also promote the public policy of encouraging early payment of valid arbitration awards and the discouragement of nonmeritorious protracted confirmation challenges. The prefatory comment to the 1954 draft of the Uniform Arbitration Act stated that court intervention in arbitration 'must be prompt and simple or the values of arbitration will be largely dissipated through prolonged litigation.'

<u>Id.</u> (quoting <u>Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.</u>, 882 P.2d 1274, 1279 (Ariz. 1994)); <u>see also</u> <u>Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.</u>, 925 P.2d 941, 952-53 (Utah 1996) (holding that petitioners, who had received an arbitration award, were entitled to reasonable attorneys' fees incurred in defending the award on appeal under the Utah Arbitration Act).

Given the legislative history of HRS Chapter 658A, the language and commentary of the UAA, and the guidance offered by other jurisdictions, we conclude that the ICA did not err in awarding HSTA attorneys' fees and costs on appeal pursuant to HRS § 658A-25.

## V. CONCLUSION

For the reasons stated above, the ICA's November 21,

49

2016 judgment on appeal, which 1) vacated in part the circuit court's February 24, 2011 final judgment, 2) reversed the circuit court's January 4, 2011 orders, 3) affirmed the circuit court's January 31, 2011 order, and 4) granted HSTA's request for fees and costs, is affirmed.

Robert T. Nakatsuji
for petitioner

Herbert R. Takahashi and
Rebecca L. Covert for
respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W.Pollack

/s/ Michael D. Wilson

